Note—See Officers, 29 Cyc. 1393 n. 73, 1422 n. 30, 1423
n. 31; 22 R. C. L. 531, 6 R. C. L. Supp. 1332.

AARON S. CRISLER, APPELLANT, V. JOSEPH M. CRUM ET AL.,
APPELLEES.

FILED MARCH 25, 1927.  No. 25706.

1. **Associations: LABOR UNIONS: RULES AND TRIBUNALS.** A labor
   union, organized as a voluntary, unincorporated association, may
   lawfully adopt rules for the government of its members and pro-
   vide tribunals within the association to determine controversies
   between the members or local divisions or lodges of the asso-
   ciation, provided such rules are reasonable and uniform and do
   not contravene the laws of the land or offend public policy.

2. ——: ——: INTERNAL CONTROVERSIES: REMEDY. Mem-
   bers of a labor union, organized as a voluntary, unincorporated
   association, are bound by and required to observe a law of the
   association which requires that a member shall exhaust his
   remedies within the association before appealing to the civil
   courts in any case of controversy arising within the association
   and for which the laws of the association provide means for
   adjudication and settlement.

3. ——: ——: ——: ——. It is a general rule of
   equity that, when a member of a voluntary, unincorporated as-
   sociation is aggrieved or feels injured by any action taken by
   the officers or committees of the association, within the scope
   of their authority and pertaining to its affairs, and where the
   laws and rules of the association provide a means of redress,
   he should first exhaust the remedies provided by the laws and
   rules of the association before applying to the civil courts.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*C. C. Flansburg,* for appellant.

*Wright & Thummell* and *H. E. Kuppinger, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD and EBERLY, JJ.

GOOD, J.

Plaintiff is a locomotive engineer in the employ of the Chicago, Burlington & Quincy Railroad Company and is a member of the Brotherhood of Locomotive Engineers. He brought this action to enjoin the defendants, as officers of said brotherhood, from interfering with his seniority rights as an engineer and other vested rights of employment; to compel defendants to revoke and rescind orders by them made, which he claims had the effect of reducing his rank and pay as an engineer; to compel defendants to restore him to his former place and seniority as an engineer, and to remove defendant Crum from working as an engineer in the Wymore division of said railway company.

Defendants answered, admitting the making of the rules and orders complained of, but alleged that they were made with full authority and in accordance with the constitution, rules and regulations of the said brotherhood. A trial resulted in a decree for defendants. Plaintiff appeals.

There is practically no dispute as to the facts. From the record it appears that the Chicago, Burlington & Quincy Railroad Company, hereinafter called the Burlington railroad, bargains and contracts with the Brotherhood of Locomotive Engineers, hereinafter called the brotherhood, for engineers to man the trains of its railway system. Contracts are made between the officers of the brotherhood and the railway system which fix the rates of pay and conditions of employment, which are valid for one year, and continue in force until another contract is entered into, or until one party to the contract gives 30 days' notice of intention to

terminate it. Pursuant to one of these contracts, plaintiff was employed as an engineer on the Burlington railroad.

The brotherhood is a voluntary, unincorporated association. Its general purpose is to combine the interests of locomotive engineers, promote their welfare and working conditions, and for other purposes, not necessary to enumerate. The brotherhood has a very elaborate system of laws, composed of a constitution, statute, and rules, regulating its affairs in almost every particular. Under its plan of organization, the supreme governing body is known as the Grand International Division of the Brotherhood of Locomotive Engineers, and will be hereinafter referred to as the grand division. This body is composed of officers of the grand division and delegates selected by and representing local divisions. It meets triennially in the city of Cleveland, Ohio. It is the supreme law-making body of the brotherhood. Its principal officer is the grand chief engineer, and his decisions have the force and effect of law and are binding unless and until reversed by an appeal to the grand division. The brotherhood is subdivided into lodges, called divisions. Each division corresponds very closely to a division of the railway system with which it contracts. The local lodge or division is empowered to select a committee of adjustment, which has power to pass upon and adjust differences between the members of the local lodge or division. The scheme of government further provides for general committees of adjustment, there being one of such committees for each railway system contracting with the brotherhood. The general committees of adjustment are given powers to contract with the railway system for employment of engineers, fixing the rights, rates of pay, conditions of employment, and other matters. These committees also have power to make rules, not inconsistent with the laws or rules of the grand division, for the government of certain affairs of the brotherhood, pertaining to the engineers of the particular railway system. These committees are given power to settle all questions in dispute as to seniority and rights to runs, or jurisdiction of territory,

Crisler v. Crum.

between the members and divisions of the particular system of railways. If any one is aggrieved over the decision upon any controversy submitted to these committees, there is a provision for an appeal from the decision to the members of the brotherhood of the particular railway sytem. In the interim between meetings of the committee the chairman thereof has the same powers as the committee. The grand division has jurisdiction over all subjects pertaining to the brotherhood, and its enactments and decisions are the supreme law of the brotherhood.

The engineers of a local division of the brotherhood operate and man the trains of a corresponding division of the railway system, by which they are employed. The engineers of each local division are classified. The first class has what are known as assigned runs. Assigned runs are those held by an assemblage of engineers assigned to leave a terminal at a regular, specified time, to arrive back to the terminal at a regular time, with regular days of leaving and arriving. The second class is known as the pool, which is an assemblage of engineers assigned to irregular freight service, whose duties require them, under the rule, to run "first in and first out." The third class is called the extra board, which is an assemblage of engineers at a division point, to fill vacancies caused by engineers laying off for sickness or anything that would require an engineer, either in the pool or on an assigned run, to leave his run for any purpose, so that an extra engineer would be necessary to fill the temporary vacancy. The members of the extra board might be properly termed substitutes. Each engineer whether on an assigned run, a member of the pool, or of the extra board, has the right to select his runs according to seniority. By seniority is meant a right vested in engineers by a period of service in the division of which the engineer is a member. The engineer longest in the service at that division has first place, and the one next longest the second place, and so on. This right of seniority is recognized by the brotherhood and the railway companies and is a valuable right of the engineer.

Crisler v. Crum.

The Burlington railroad has one division known as the St. Joseph division which operates trains out of the city of St. Joseph, Missouri. These trains run over tracks from St. Joseph, north through Napier, Missouri, to Council Bluffs and Omaha. It has another division known as the Wymore division, located at Wymore,. Nebraska, and from this point trains are operated between Wymore and St. Joseph, and also between Lincoln, Nebraska, and St. Joseph, both by way of Napier. Both of these trains run over the track between Napier and St. Joseph, which is a part of the St. Joseph division. There is a local lodge or division of the brotherhood located at St. Joseph, known as No. 107, and another lodge or division, known as No. 621, located at Wymore. The Burlington tracks between Wymore and Napier and between Lincoln and Napier are within the Wymore division. The engineers of the St. Joseph division of the brotherhood operate and man the trains running over the St. Joseph division, while those at Wymore operate and run the trains in the Wymore division. It appears that sometimes, where a track is used by two or more divisions, it is what is known as a joint track and constitutes a part of each of the divisions operating over it. But where there is not a joint track, and the trains of one division run over a part of the track of another division, the brotherhood of the latter division is given the right to supply a proportionate part of the engineers to man the trains which run, in part, over the two divisions, the proportion being based on the number of miles of the runs within each division.

This condition gave rise to a controversy between the Wymore division and St. Joseph division of. the brotherhood. The matter was taken to the general committee of the brotherhood for the Burlington system, and appealed to the grand chief engineer, and finally to the grand division, where, in 1912, the decision of the grand chief engineer, ruling that the Wymore division was entitled to man exclusively the trains running between Lincoln and St. Joseph and between Wymore and St. Joseph, was sustained. Several years later the general committee of the brother-

hood for the Burlington railroad adopted a rule which provided that in such a situation each of the divisions should be entitled to furnish engineers to man such trains in the proportion of the mileage that such trains ran in each division, but no attempt was made to put this rule into force, as between the Wymore and St. Joseph divisions, until the grand division had acted and again referred the question back to the general committee for adjustment. This was done in 1921. When the matter was called to the attention of the grand chief engineer, he at first declined to consider the question, on the theory that it had been previously settled, in 1912. An appeal was taken from the grand chief to the grand division in triennial session, which at first sustained the ruling of the grand chief, but later rescinded and referred the entire matter back to the general committee of the brotherhood for the Burlington system. Pursuant to the rule previously adopted by the general committee, it assigned to the St. Joseph division of the brotherhood a proportion of the engineers operating trains which ran over the two divisions. This resulted in displacing some of the engineers of the Wymore division, and each engineer in the latter division was affected, because it reduced the number of runs which the Wymore division could man or operate, and by reason thereof some of the engineers on assigned runs in the Wymore division were forced back into the pool, and some of the pool engineers were forced back to the extra board, and their wages greatly diminished.

Plaintiff contends that his seniority is a property right and has been invaded and wrongfully destroyed by the actions of defendants; that the action of the grand division, in 1921, in referring back to the general committee for adjustment the controversy between the St. Joseph and Wymore divisions of the brotherhood was irregular and void; that the action of the general committee was without authority and void; that such action has deprived plaintiff of his seniority right as an engineer and reduced his rank and greatly diminished his wage as an engineer.

For the purposes of this case it may be conceded, with-

out deciding, that plaintiff's right of seniority as an engineer is a property right, and that it may not be wrongfully divested or interfered with by another. We think it is unnecessary, for a determination of this case, to decide whether the action of the grand division, in referring the controversy back to the general committee, was valid. The action of which plaintiff complains was not the action of the grand division, but resulted from the action of the general committee, and it is pertinent to determine whether the action of the committee was within its power, and whether the action of such committee operated to destroy or affect plaintiff's right to seniority.

Does the record show that plaintiff's seniority right has been interfered with or destroyed? Plaintiff's seniority pertains to the Wymore division of the brotherhood only. A roster of the engineers of that division is maintained. The oldest engineer in point of service in that division is entitled to the first place on the roster; the next oldest in service, to second place, and so on; and the engineers on the roster, other things being equal, are entitled in their order to select runs, or, in other words, entitled to choice of runs, in accordance with their rank on the roster. Plaintiff still maintains his position on the Wymore roster of engineers as he did before; his relative position thereon has not been changed, so that, strictly speaking, his right of seniority has been neither interfered with nor destroyed. But it is true that by the action of the general committee some of the runs, which prior to its action were manned by the Wymore division, are now manned by the St. Joseph division. This results in displacing a number of the engineers on the Wymore division and giving their places to the St. Joseph division. This necessarily leaves fewer positions as engineers, open to the Wymore division, from which to select. Since the older members in point of service are entitled to selection, it follows that the younger or junior members of the roster will be forced down the line in the runs that are available to them. It results in retiring some of the engineers from the assigned runs to the pool and will, perhaps,

force some of the members of the pool back to the extra board.

The next question for determination is: Was the general committee authorized to act in the premises and to award to the St. Joseph division the right to furnish a part of the engineers to man the runs on trains between St. Joseph and Lincoln and between St. Joseph and Wymore, which operated by way of Napier? By reference to the laws of the brotherhood, as disclosed by the record, it appears that the general committee is vested with power to adjudicate and determine, as between divisions of the brotherhood, the rights of each division to man or operate the runs known as interdivisional runs, and it further appears from the evidence that the runs between St. Joseph and Lincoln and between St. Joseph and Wymore by way of Napier are interdivisional runs. It follows therefore that the general committee had power to pass upon and adjudicate the question.

It further appears that there is what is called a joint track, being a railroad track used by two divisions jointly, and over which each division runs trains; that, the track being a part of each division, neither division has any right to furnish engineers except to man the trains of its own division. Plaintiff contends that the track from Napier to St. Joseph is, in fact, a joint track and is therefore within both the Wymore and St. Joseph divisions. It is possible that this may have been the case when the grand chief and the grand division in 1912 made the ruling that the Wymore division was entitled to man all the runs and furnish all the engineers for the runs between St. Joseph and Lincoln and between St. Joseph and Wymore, which run over the track between Napier and St. Joseph; but in this case it appears from the record that the parties have stipulated that the track from St. Joseph to Napier is within and a part of the St. Joseph division. In his brief plaintiff so admits. This being true, it is apparent that his position, that the track between St. Joseph and Napier is a joint track, is not well founded.

The record discloses that the general committees are

authorized to adopt rules to regulate and control the matters
of the brotherhood which are, by general laws of the broth-
erhood, committed to the general committees, provided that
the rules so adopted do not violate or transgress the laws
of the grand division.   It is also disclosed that the general
committee of the brotherhood for the Burlington system,
pursuant to authority in it vested, did, in 1919, adopt a rule
which would be applicable to the brotherhood employed by
the Burlington system, of which the following is a copy:
"When crews run on or over two or more seniority divisions,
the assignments shall be made on basis of percentage of
miles run on each division."   It was pursuant to this rule,
duly adopted, that the general committee decided that the
St. Joseph division was entitled to furnish a proportion of
the engineers for the runs between St. Joseph and Wymore
and between St. Joseph and Lincoln.   For aught that ap-
pears, it seems that the decision of the general committee
was in accordance with the rule, and also in accordance
with the general rules and laws of the supreme governing
body of the brotherhood; but whether any error was made
in the ruling it is unnecessary to decide.   The laws of the
brotherhood provide for an appeal, in matters of this char-
acter, from the general committee.   If either party to a
decision is aggrieved, he may first appeal to the member-
ship of the brotherhood, which operates on the Burlington
system, and there is a further provision that an appeal may
be taken on questions of law to the grand chief engineer,
and from his decision an appeal lies to the grand division.
Plaintiff in this case did not seek to avail himself of the
rights conferred by the laws of the brotherhood.   He ap-
pealed neither to the members of the brotherhood, as pro-
vided, nor to the grand chief for an interpretation of the
law or a decision of the controversy.

Plaintiff, however, argues that the appeal to the mem-
bership affords no remedy, in fact, because there is no
means or method provided by the laws or rules of the
brotherhood for taking a vote upon the question.   In this
contention plaintiff is clearly mistaken.   The laws do pro-

vide the manner and the time in which a vote of the members may be taken upon such a question. While the method may be somewhat cumbersome, still we are unable to say that it does not provide an adequate method of determining the question by appeal. In any event, it is in accordance with the supreme law of the brotherhood, of which plaintiff is a member. When he became a member of the brotherhood, he became bound by all of its laws, rules, and regulations, and is required to observe them. These rules further require that, before he could take any question to the civil courts for determination, he should first exhaust his rights by an appeal to the tribunals provided by the laws of the brotherhood. If plaintiff was dissatisfied, his proper course was to pursue the remedy provided in the laws and regulations of the brotherhood.

A labor union, organized as a voluntary, unincorporated association, may lawfully adopt rules for the government of its members and provide tribunals within the association to determine controversies between members or local divisions or lodges of the association, provided such rules are reasonable and uniform and do not contravene the law of the land or offend public policy.

The laws of the brotherhood provide that a member, before appealing to the civil courts in any case of controversy arising within the organization, should previously exhaust all his remedies within the brotherhood. Members of a labor union, organized as a voluntary, unincorporated association, are bound by and required to observe a law of the association which requires that a member shall exhaust his remedies within the association before appealing to the civil courts in any case of controversy arising within the association and for which the laws of the association provide means for adjudication and settlement.

It is a general rule of equity that, when a member of a voluntary, unincorporated association is aggrieved or feels injured at any action taken by the officers or committees of the association, within the scope of their authority and pertaining to its affairs, and where the laws and rules of the

association provide a means of redress, he should first exhaust the remedies provided by the laws and rules of the association before applying to the civil courts.

While our attention has not been called to any case or authority precisely in point, the following authorities, in a general way, support the principles herein announced: *Pixley v. Cleaver*, 105 Neb. 485; *Ihnen v. South Omaha Live Stock Exchange*, 101 Neb. 195; *Jackson v. South Omaha Live Stock Exchange*, 49 Neb. 687; *Stivers v. Blethen*, 124 Wash. 473; *Loeffler v. Modern Woodmen of America*, 100 Wis. 79.

In the instant case, plaintiff complains of the action of the officers of the brotherhood who have acted on a matter within their jurisdiction. He was entitled to appeal for relief to a higher tribunal within the association. He elected not to pursue that course. He is therefore not entitled at this time to appeal to a court of equity for redress.

It follows that the judgment of the district court should be, and is,

AFFIRMED.

Note—See Associations, 5 C. J. 1365 n. 46; 6 A. L. R. 965; 16 R. C. L. 422, 3 R. C. L. Supp. 568.