HAMILTON M. HENRY & others *vs.* HENRY A. TWICHELL & others.

Suffolk. December 6, 1933. — March 28, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Labor Union. Equity Jurisdiction,* Affecting internal affairs of labor union.

In a suit in equity by members of a union of railroad employees against certain officers of the union and a railroad corporation to establish seniority rights which the plaintiffs alleged they had by reason of an agreement between the union and the railroad corporation, the bill properly was dismissed on the ground that the plaintiffs were not entitled to seek relief in the courts until they first had exhausted the remedies given to them by the laws of the union.

Members of a labor union, in a suit in equity against the members of a committee of adjustment thereof, were not entitled to have the defendants ordered to enter a decision on a protest addressed by the plaintiffs to the defendant chairman, where it appeared that the laws of the union provided that any action taken by the committee or by the chairman should "stand as law for all members" until "repealed" by the committee or upon appeal to the membership of the union; that the chairman had rendered a decision on the protest; and that the plaintiffs had not taken any further action with respect thereto.

BILL IN EQUITY, filed in the Superior Court on July 28, 1932, and afterwards amended, described in the opinion.

The suit was referred to a master. Material findings by him are stated in the opinion. By order of *Weed*, J., there were entered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiffs appealed from both decrees.

*A. L. Doggett*, (*E. K. Bragg* with him,) for the plaintiffs.

*T. C. O'Brien*, (*J. E. Keefe, Jr.*, with him,) for the defendants.

CROSBY, J. This is a bill in equity, brought by certain members of certain local lodges or divisions, so called, of the Brotherhood of Locomotive Engineers, against the members of the general committee of adjustment on the Boston and Maine system of said brotherhood, and against the Boston and Maine Railroad. The bill seeks to restore to the plaintiffs as engineers certain seniority rights, to which they allege they have been entitled, under an agreement entered into to take effect May 9, 1924, between said brotherhood and the Boston and Maine Railroad system, and under similar prior agreements. These rights, the plaintiffs contend, were impaired by an agreement entered into (as they allege, without authority,) by the defendant Twichell, as chairman of said general committee of adjustment, with the Boston and Maine Railroad. The bill seeks, in the alternative, that the members of the general committee of adjustment be ordered to enter a decision on a protest filed in April, 1929, addressed to the general chairman of the brotherhood of locomotive engineers by the plaintiff Henry and two others as a committee of division 335 of said brotherhood. The case was re-

ferred to a master to find the facts and report the same to the court, together with such questions of law as any party may request. The plaintiffs filed certain objections to the master's report. An interlocutory decree was entered overruling the objections and confirming the report, and a final decree was entered dismissing the bill with costs. The plaintiffs appealed from both decrees.

The facts found by the master are as follows: For many years agreements relative to the rates of pay and working conditions have existed between the Brotherhood of Locomotive Engineers (which will hereafter be referred to as the brotherhood) and the Boston and Maine Railroad system. The principle of awarding positions in the service in the order of seniority has been followed in these agreements. The agreement in force when the subject matter of this suit arose, entitled "Rules and Rates of Pay Applicable to Locomotive Engineers," which took effect May 9, 1924, and is hereinafter referred to as the schedule of 1924, contains certain provisions relative to seniority. It contains no provision as to the length of time it shall remain in force, and no provision as to its modification. However, there was in force at this time a provision of the Federal labor act relative to making changes in such an agreement.

Before 1925 the Boston and Maine Railroad was divided into several operating divisions, among which were the Portland, the Southern, and the Worcester, Nashua and Portland (hereinafter referred to as the W. N. & P.), each of which comprised a seniority district. The names of the engineers and firemen appeared on rosters in seniority order within their respective divisions, the engineers in the order of their promotion date, so called, which is the seniority date defined in the schedule of 1924. On or about August 15, 1925, the railroad corporation abolished the W. N. & P. division, and merged part of it with the Southern division and part of it with the Portland division. At that time the railroad corporation took up with the chairman of the general committee of adjustment of the brotherhood, and with the chairman of the committee having like duties representing the brotherhood of locomotive firemen

and enginemen, the question of changing the seniority districts to correspond with the new operating districts. Following this proposal to merge the seniority districts the chairmen of the firemen's and engineers' committees called their committees together in joint session on August 26, 1925. The question immediately arose as to the order of seniority in which, in the event of merger, the W. N. & P. men should be placed on the rosters of the enlarged Southern and Portland divisions. After discussion and a consultation with the grand chief engineer of the brotherhood, a resolution was adopted calling for a vote on the question of merger of the districts on the entering service date basis, and was submitted to the men in the divisions involved. It failed of adoption. Later another ballot was submitted to the engineers of the districts involved for their vote on the question of merger on a promotion date basis. This method of merger also failed.

The railroad corporation on July 26, 1927, by letter to the defendant Twichell, chairman of the engineers' committee, and G. S. Henderson, chairman of the firemen's committee, notified the brotherhoods of engineers and firemen that the seniority districts would be merged to conform to the new Southern and Portland operating divisions to take effect September 1, 1927. As a result of this notice the defendant Twichell called together the general committee of adjustment of the brotherhood and Henderson called together the committee having like duties of the brotherhood of locomotive firemen and enginemen to sit in joint session. At the time of this meeting the constitution, statutes, and standing rules of the brotherhood were those adopted in June, 1924, but a new constitution with statutes and standing rules was adopted at the convention held in June and July, 1927, to take effect October 1, 1927. Section 33 of the 1924 standing rules was modified to read as follows: "Sec. 34. (a) No new business will be entertained by a General Committee of Adjustment unless sent under the seal of Divisions interested. (b) The General Committees of Adjustment shall have full power to settle all questions of seniority and rights to runs and jurisdiction of territory that are presented to

them, and their decision shall be final unless, on an appeal to the membership, their decision is repealed by a majority vote." "(This law is effective July 12th, 1927.)"

The general committee of adjustment is the committee of the brotherhood having power to adjust grievances and make agreements with the railroad corporations upon any railroad system. In the standing rules of 1927 as to its powers are the following: "Sec. 36. (a) The right to make and interpret contracts, rules, rates and working conditions for Locomotive Engineers shall be vested in the regularly constituted Committees of the B. of L. E." "Sec. 27. Any action taken by a General Chairman or a General Committee of Adjustment on any system shall stand as law for all members and Divisions on said system until repealed by the General Committee, or in accordance with provision for appeals in Section 28, Standing Rules. . . ." Rulings by the grand chief engineer dated October 10, 1927, as to the powers of such committees are as follows: "(8) THAT all questions affecting seniority rights or jurisdiction of territory belong to the General Committee of Adjustment or General Chairman if between meetings. Section 35, Page 101, Standing Rules. (9) THAT no protest involving seniority, which has stood without protest for a period of ninety days, can be entertained by the Division, or the General Committee of Adjustment. Statutes of Limitation, Page 103. Standing Rules." The general committee of adjustment upon the Boston and Maine system is composed of members elected to that committee triennially by the local lodges, called divisions. Meetings of this committee were governed during the time the acts complained of occurred by the following provisions of the standing rules of 1927: "Sec. 9. It shall be the duty of the General Committee of Adjustment of each system to meet triennially . . . and adjust the differences of the system, if any exist. At any time between triennial sessions, should a majority of the Divisions on a system instruct the Chairman to convene the General Committee of Adjustment, he shall do so without delay. At all such meetings, as soon as each Division has presented its grievances . . . the Com-

mittee may reduce to an Executive Committee, composed
of not to exceed five members of the Board, elected by
the Committee.  In case of an emergency, the Chairman is
empowered to convene the Committee when, in his judg-
ment, it is absolutely necessary."

The two committees of the engineers and of the firemen
met together at Boston on August 23, 1927.  The letter
of July 26, 1927, from the Boston and Maine Railroad
was read, and the committee worked on the plan of merger
of seniority districts.  Then the two committees (the
engineers' committee purporting to act under the para-
graph of the standing rules relating to reduction to an
executive committee, set forth in paragraph 19 of the mas-
ter's report) reduced to an augmented executive committee.
This augmented executive committee met and adopted a
plan which, on October 10, 1927, was sent by the defend-
ant Twichell, as chairman of the general committee of
adjustment of the engineers, and G. A. Henderson, as
chairman of the like committee of the firemen, to A. H.
Slader, assistant to the president of the Boston and Maine
Railroad.  The plan was adopted by the representatives
of the railroad corporation, but conferences led to modi-
fications of the plan which were adopted by the joint aug-
mented committee on November 1, 1927.  Soon after this
meeting the plan was reduced to writing and a bulletin
was sent to all the committeemen, chief engineers and
secretaries of all lodges of the brotherhood on the railroad
system, and on November 26, 1927, a notice was sent to
the divisions that the merger between the W. N. & P.
seniority district and the Southern and Portland seniority
districts would be effective as of December 1, 1927.  These
notices were read in all the local lodges or divisions and
were generally known to the members of the brotherhood
in the districts involved.  Pursuant to the plan, seniority
rosters of the new Southern and Portland districts were
prepared, in which the engineers of the W. N. & P. district
were inserted on the basis of their entering service dates,
except that as between themselves they were placed in the
order of their promotion dates.  The men of the original

Southern and Portland divisions remained on the rosters in the order of their promotion dates. In making up the rosters certain cases were decided to the advantage of the W. N. & P. men, while others were decided to the advantage of Southern and Portland division men. The railroad corporation entered into the merger of seniority districts on the basis of the plan in good faith, and in reliance upon the authority of general chairman Twichell to represent the brotherhood. The master found that "The merger immediately caused dissatisfaction among the engineers affected, which has increased as its effects have manifested themselves. . . . A good many men on all the districts affected felt themselves aggrieved because the plan had been agreed upon with the Railroad without giving the men an opportunity to vote upon it. This dissatisfaction manifested itself in several protests being addressed to the General Committee of Adjustment under § 35 of the standing rules . . . and in attempts to bring the matter before the grand chief engineer and the grand international division of the brotherhood."

The standing rules of 1927 of the brotherhood, as to appeals coming under the jurisdiction of the general committee of adjustment or its chairman, are as follows: "Sec. 28. An appeal may be taken from the decision of the General Committee of Adjustment or the Chairman to the members of the system, if made within ninety days from the date of such decision, and a majority vote of members on said system shall be final; this vote to be taken in the same manner as in the election of Division officers. Such appeal may be taken by any member in good standing who may feel himself aggrieved, by making a full statement of his case, accompanied by a statement of the General Committee of Adjustment signed by the General Chairman and Secretary, and it shall be the duty of the proper officers of the Division to place the seal upon it and transmit it to Divisions on the system, and the Division must take the vote within thirty days from receipt of notice of appeal." "Sec. 29. All appeals from the General Committee of Adjustment on all settlements shall

first be appealed to the Grand Chief on points of law involved for his decision before they can be entertained by the Grand Body." "Sec. 35. When a question of jurisdiction of territory or seniority arises between the members themselves or two or more Divisions that cannot be amicably adjusted by such Divisions, said question shall, with all the facts in the premises, be referred to the General Committee of Adjustment who shall rule on the matter and such ruling shall stand as a law, subject to appeal as per Section 28 of the Standing Rules." "A Statute of Limitation of ninety (90) days is hereby fixed within which to take up or appeal any case of seniority subject to appeal in accordance with Section 50 of the Statutes. A Statute of Limitation of two years is hereby fixed within which to take up and appeal any case of factional dispute. If two years have elapsed without a written protest being filed in such case, it cannot be taken up by a Division or General Committee of Adjustment."

Section 50 of the statutes adopted at the 1927 convention above referred to reads as follows: "Any member in good standing who feels that an injustice has been done him in a case coming under the jurisdiction of the General Committee of Adjustment may appeal to that body, provided such appeal is made within 60 days, and the Division must entertain such appeal and send it under the seal to the Chairman of the General Committee of Adjustment." The grand chief referred to in § 29 of the standing rules is the head officer of the brotherhood. The grand body is the grand international division, which holds the triennial convention of the brotherhood. The constitution of the brotherhood adopted in June and July, 1927, contains the following provision relative to appeals to the grand international division: "Sec. 49. All appealed cases, except cases of seniority, jurisdiction of territory and rights to runs, shall be forwarded to the Grand Office, under the seal of the Division of which the maker is a member, not less than thirty (30) days before the Convention convenes. No appeal will be entertained until they have complied with all the requirements of the law."

Upon the question what constitutes a factional dispute which can be taken up by a general committee of adjustment under the last paragraph of § 35 of the standing rules, the first paragraph of § 48 of the statutes must be considered. It reads: "In the event of trouble arising in any Division or between two or more Divisions that cannot be amicably adjusted, an Assistant Grand Chief Engineer may be sent to adjust the same and his findings when approved by the Grand Chief Engineer shall be final unless appealed from by a majority of the Divisions on the system where the trouble occurred."

Division 483, a lodge from the former W. N. & P. district, filed a protest against the merger of seniority districts, which was heard at a meeting of the general committee of adjustment on October 16, 1928. This protest was denied October 17, 1928, and a further vote was passed at the same time sustaining the action of the committee in putting the plan of merger into effect. The protest of division 483 was appealed to the grand chief engineer on questions of law under § 29 of the standing rules and to the grand international division under § 49 of the constitution. The grand chief engineer overruled the questions of law raised, and the triennial convention of 1930 refused to entertain the appeal on the ground that the matter was within the exclusive jurisdiction of the general committee of adjustment. The master further found that this committee on October 17, 1928, also heard the protest of one Martinson, an engineer of the Southern division. The committee denied the appeal, and no appeal from its decision was taken. The evidence was conflicting upon the question whether the plaintiff Henry, within ninety days after December 1, 1927, filed a protest against the merger, or filed an appeal from it, with his local lodge, division 335. The records of that division contain no evidence of such a protest or appeal. Nor was such protest or appeal ever transmitted to the general committee of adjustment under the seal of the division as required by § 50 of the statutes.

On April 14, 1929, three members of division 61 filed a protest with their lodge. The protest was transmitted by

the secretary to chairman Twichell of the general committee of adjustment, and was acknowledged by letter to the secretary. On May 11, 1929, three members of division 61 filed a protest with their lodge formally protesting the ruling that the time of protest had expired as stated in chairman Twichell's letter of April 17, which protest was duly transmitted to him. On May 13, 1929, Twichell, as chairman, by letter acknowledged receipt of the last mentioned protest, and stated that the matter would be taken up before the full committee at its next session. The master finds that the matter has never been brought before the full committee. On July 21, 1929, division 61 appointed a committee to draft a ballot for the purpose of an appeal under § 28 of the standing rules. After correspondence between the chairman of this committee and the grand chief engineer of the brotherhood nothing further was done about it. Subsequently, on November 10, 1929, division 61 voted to drop the subject of merger. On November 24, 1929, a motion to reconsider the vote was lost. In April, 1929, a protest against the merger was filed by the plaintiff Henry and two others as a committee representing division 335 of Manchester, New Hampshire, a Southern division lodge. This protest was authorized by vote of the lodge. To this protest chairman Twichell replied by letter dated June 4, 1929, in which he reviewed the facts relating to the adoption of the merger plan, stated that an appeal had been taken by several individual members, and division 483, from the decision of the general committee of adjustment to the grand chief, who informed them that it would have to be handled under the laws of the organization through the general committee, protesting this plan of merger; that the general committee of the brotherhood was convened October 16 to 20, 1928, inclusive, and handled the various protests, and dismissed the protest of division 483, and that therefore "any further appeal from the General Committee of Adjustment will have to be to the membership in accordance with the laws of the B. of L. E."

On August 15, 1930, which was after the triennial con-

vention of 1930 had adjourned, the plaintiff Henry took the matter up with Johnston, the grand chief engineer, and received a reply in which reference was made to an investigation that was conducted by a grand officer, Johnston stating that "it all resolves itself back to the point of where it is a matter addressing itself strictly to the General Committee of Adjustment and I would have no authority under the B. of L. E. law to interfere with the decision of the General Committee, only on points of law and there are no points of law that have been brought to my attention that would justify me in setting aside the action of your General Committee of Adjustment on this question." The plaintiff Henry again brought the matter to the attention of the grand chief engineer, by letter dated April 6, 1931; the latter replied by letter dated April 22, 1931, refusing to reopen the matter.

The master found, besides other facts, (1) that the letter of July 26, 1927, from the Boston and Maine Railroad to the chairman of the general committee of adjustment was an emergency justifying him in calling his committee together under the last paragraph of § 10 of the standing rules of 1924; (2) that the general committee of adjustment in considering the question of merger acted within its powers under § 34 (b) of the standing rules of 1927, and had further authority to consider the matter under § 36 (a) of the same rules; (3) that the proposal of merger of seniority districts was not new business coming from a division within the meaning of § 34 (a) of these rules; (4) that the general committee of adjustment acted within its powers in reducing to an executive committee in accordance with the third paragraph of § 9 of the standing rules of 1927; (5) that under § 34 (b) of the same rules the general committee of adjustment had full power to enter into the merger plan; (6) that an irregularity in procedure in the augmented executive committee would not warrant setting aside in equity the plan of merger agreed upon with the railroad corporation; (7) that in their work in the preparation of the plan of merger of 1927, and in the preparation of the 1927 combined roster, the general committee of adjustment and the

seniority committee were making a compromise between the views and desires of the men of the divisions concerned; that it was a compromise which greatly benefited the engineers of the W. N. & P. seniority district, and considerably injured the engineers of the Southern and Portland divisions, as compared with their respective situations before the merger of seniority districts, "but was not unreasonable and was made in good faith"; (8) that as between the men and the railroad corporation, the merger of seniority districts to conform to operating divisions was a fair and reasonable concession, and the situation warranted the making of that concession by the men to the railroad corporation.

The plaintiffs objected to certain of the master's findings but there seems to be no valid reason for setting them aside. Their contention that under § 34 of the standing rules the general committee of adjustment had no authority to consider the seniority question unless it was sent under the seal of the divisions interested is not supported by the facts found. Section 34 (a) requires that this procedure be followed when new business is to be presented. A question relating to seniority was not such business, and authority to consider it without submission under seal is clearly given by § 34 (b). Besides, in accordance with the findings of the master, additional authority in the general committee of adjustment to consider this question is to be found in § 36 (a) of the standing rules of 1927. The finding that the letter from the railroad corporation to the chairman of the general committee of adjustment was an emergency justifying him in calling the committee together under the last paragraph of § 9 of the standing rules of 1927 was not unwarranted.

Even if that committee exceeded or improperly exercised its powers in the circumstances, the plaintiffs were required first to exhaust the remedies given them by the organization before seeking relief in the courts. *Agrippino* v. *Perrotti*, 270 Mass. 55, 61. *Mulcahy* v. *Huddell*, 272 Mass. 539, 546. *Snay* v. *Lovely*, 276 Mass. 159, 164, and cases cited. See *Donovan* v. *Travers*, 285 Mass. 167. The master further found as follows: "The plaintiffs have in

good faith endeavored to bring their objections to the merger, and to the merger roster, to the attention of the General Committee of Adjustment and to that of the Grand Chief Engineer. They inadvertently failed, however, to take any appeal to the membership from the original action of the General Chairman in agreeing upon the merger, as they might have done under Sections 27 and 28 of the Standing Rules." The "defendant Twichell, as chairman, by letter dated June 4, 1929, . . . ruled, in good faith, in substance that the subject matter of the protest of division 335 had already been passed upon. No other action was taken by Chairman Twichell upon said protest of division 335, and his letter was notice that none would be taken by him. His ruling, under § 27 of the Standing Rules, stands 'as law for all members and Divisions on said system until repealed by the General Committee, or in accordance with provisions for appeals in Section 28, Standing Rules,' to the members of the Brotherhood on the Boston and Maine system"; and no "attempt was made to bring Chairman Twichell's said ruling before the General Committee of Adjustment, or before the members of the Brotherhood on appeal." These findings require the dismissal of the bill under the well settled equitable principle of the exhaustion of remedies.

The plaintiffs' alternative claim for relief that the general committee of adjustment be ordered to render a decision upon the protest of division 335, filed in April, 1929, cannot properly be sustained. In accordance with the master's findings a decision on such protest was rendered by chairman Twichell in his letter dated June 4, 1929, and this stood as the law under § 27 of the standing rules, until repealed by the general committee, or in accordance with § 28. The master found that no action has been taken thereon by the plaintiffs.

As the plaintiffs have failed to show any ground for equitable relief, the interlocutory decree is affirmed, and the final decree dismissing the bill with costs is affirmed with costs of the appeal.

*Ordered accordingly.*