GRAND INTERNATIONAL BROTHER-
HOOD OF LOCOMOTIVE ENGINEERS
et al. v. MARSHALL et al.

No. 2076.

Court of Civil Appeals of Texas. Waco.
June 9, 1938.

Rehearing Granted in Part July 7, 1938.

Rehearing Denied Sept. 29, 1938.

Thompson, Knight, Baker, Harris & Wright and J. Hart Willis, all of Dallas, and Harold C. Heiss, of Cleveland, Ohio, for appellants.

B. A. Golding, of Houston, and L. W. Shepperd, of Groesbeck, for appellees.

ALEXANDER, Justice.

This suit was brought by Walter Marshall and R. L. Strong against Grand International Brotherhood of Locomotive Engineers and certain other parties not necessary to be here mentioned to enjoin said brotherhood from interfering with the plaintiffs' alleged seniority rights as railway engineers to man all passenger engines operating south of Dallas over the line of the Burlington-Rock Island Railway Company as applied to certain through passenger trains being run over the lines of the Rock Island and Burlington-Rock Island from Fort Worth through Dallas to Teague. At the conclusion of the evidence the trial court granted a permanent injunction as prayed. The defendants appealed.

Briefly stated, the facts are substantially these: The plaintiffs Marshall and Strong are and have been members of the Brotherhood of Locomotive Engineers for a number of years. Said brotherhood is an unincorporated voluntary association of locomotive railway engineers. Its purpose is to provide, among other things, for collective bargaining on the part of its members and to secure, regulate and protect their rights as railway employees. It contracts with the railway companies for and on behalf of its members and reserves to itself the exclusive right to determine who of the railway companies' employees shall man the various trains as engineers and it is solely within this brotherhood that seniority rights among railway engineers are recognized, regulated and protected. For many years prior to 1930, Marshall and Strong had been employed as engineers on the Trinity & Brazos Valley Railway Company, and, under the rules of the brotherhood, had acquired certain seniority in the right to man the passenger engines on the trains of said company on its division between Waxahachie and Teague. The evidence further shows that the Trinity & Brazos Valley Railway Company went into the hands of a receiver and in 1930 it was merged into or absorbed by the Burlington-Rock Island Railway Company and plaintiffs thereby became employees of that company. Shortly thereafter, the Chicago, Rock Island & Gulf Railway Company (called Rock Island), whose road ran from Fort Worth to Dallas and who held a lease right to operate trains over the M. K. & T. railway line from Dallas to Waxahachie, and the Burlington-Rock Island Railway Company, whose road ran from Waxahachie through Teague to Houston entered into a joint traffic agreement for the transportation of freight over said roads from Fort Worth through Dallas and Teague to Houston. On January 16, 1933, the Brotherhood of Locomotive Engineers, in conjunction with the Brotherhood of Locomotive Firemen and Enginemen, the Order of Railway Conductors and Brotherhood of Railway Trainmen, entered into an agreement for the apportionment among the employees of said railroads the work involved in the operation of the trains over said route. At that time there was no regular through passenger service over said route. Said agreement, however, apportioned the work involved in the operation of any special passenger traffic over said route on the basis of two-thirds to the employees of the Burlington-Rock Island Railway Company and one-third to the employees of the Rock Island. This arrangement was accepted by the railway companies involved and put into effect but was subject to cancellation by either party upon thirty days notice. Late in 1936, the Rock Island and the Burlington-Rock Island entered into a new traffic arrangement for the operation of through passenger service over the route in question from Fort Worth via Dallas and Teague to Houston. Thereupon, a new dispute arose between the employees of the Fort Worth & Denver City Railway Company, the Rock Island and the Burlington-Rock Island as to whose employees should man the passenger trains in question. Local and general committees from the four orders above mentioned, representing the employees of the various roads involved, were unable to agree and the matter was referred to

the Grand Chief Engineer, or president, of the Brotherhood of Locomotive Engineers, and the heads of the other three orders above mentioned for decision. The heads of said orders appointed representatives to investigate the matter and report the facts, with their recommendations, for a decision. One O. K. Hedges was appointed to represent the president of the Brotherhood of Locomotive Engineers. Upon investigation, it developed that the route in question ran from Fort Worth to Dallas, a distance of thirty-four miles over the Rock Island line over which the employees of that company had superior rights, from Dallas to Waxahachie, a distance of thirty miles over a line leased by the Rock Island from the M. K. & T. Railway Company, which portion of the route was treated as neutral territory, and from Waxahachie to Teague, a distance of sixty-seven miles over the Burlington-Rock Island line and over which the employees of that company had superior rights. The employees of the Fort Worth & Denver City Railway Company claimed a portion of the work because that company operated trains over the Rock Island from Fort Worth to Dallas under a lease contract. After a proper hearing by said investigators and a report by them, said Grand Chief Engineer of the Brotherhood of Locomotive Engineers, in conjunction with the heads of the three other unions above mentioned, rendered a decision on May 19, 1937, apportioning the work incident to the operation of said through passenger service by allotting to the employees of the Rock Island one-third and to the employees of the Burlington-Rock Island two-thirds. The employees of the Fort Worth & Denver City Railway Company were denied any portion thereof. Said decision was accepted by the railroad companies in question and ordered put into effect by bulletin of date August 26, 1937. The plaintiffs were dissatisfied with said decision, contending that the seniority rights of the Burlington-Rock Island employees had not been properly preserved. They immediately entered their protest and notified the Grand Chief Engineer, or president, of the Brotherhood of Locomotive Engineers, of their desire for a rehearing thereon. Said president appointed a representative to reinvestigate the matter, but before said investigation could be conducted, or the question of a rehearing determined, the plaintiffs instituted this suit and secured a temporary restraining order enjoining said brotherhood from putting said agreement into effect and further requiring said brotherhood to respect the plaintiffs' exclusive right to man all passenger engines over said route from Dallas through Teague. Said injunction had the effect of preventing further consideration and determination of said matter by the brotherhood, and, as a consequence, no further action had been taken therein at the time final judgment was rendered herein.

█ It is undisputed that the plaintiffs are members of and subscribers to the constitution and by-laws of said brotherhood and that whatever seniority rights they enjoy emanate from said brotherhood and are secured to them exclusively by virtue of their membership therein and not by virtue of any contract between them and any of the various railway companies mentioned. The various railway employees here involved, by joining the brotherhood and accepting the benefits thereof, thereby subjected themselves to all reasonable rules and regulations of the brotherhood as to matters within the jurisdiction thereof, and are bound by its decisions therein so long as such decisions are in accordance with the rules thereof, and not otherwise illegal.

The rules of the brotherhood provide, in part, as follows:

"Sec. 35(a) When a question of jurisdiction of territory or seniority arises between the members themselves or two or more Divisions that cannot be amicably adjusted by such Divisions, the question shall, with all the facts in the premises, be referred to the General Committee of Adjustment who shall rule on the matter and such ruling shall stand as a law, subject to appeal as per Section 28 of the Standing Rules.

"(b) But wherever one railroad or any portion is absorbed, traffic diverted, consolidated, merged, leased or co-ordinated by or with another railroad, the engineers on the road or roads or any portion thereof, affected thereby, shall retain their rights and seniority, as heretofore, on the roads absorbed, traffic diverted, consolidated, merged, leased, or co-ordinated but when it becomes necessary to readjust the service of the roads affected, the runs shall be manned by engineers of the respective roads in proportion as near as practicable to the mileage run on the territory of each road, it being the policy

of the organization that when, through the absorbing, consolidation, merging, leasing, co-ordination or by the diversion of traffic of or by railroads, districts, or portions thereof, where the rights to runs of engineers are affected, the General Committee of Adjustment representing the engineers involved shall meet within thirty days unless further time is mutually agreed upon by all Committees and agree upon the proper adjustment of the question.

"(c) When General Committees are unable to agree upon a settlement of questions arising covered by the foregoing they will submit a joint statement setting forth their contentions regarding same, with all the facts in the premises, to the Grand Chief Engineer, who after making a thorough investigation, is authorized, in conjunction with the Advisory Board, to render a decision which shall be final subject to appeal to the Grand International Division."

By section 94 of the standing rules of the brotherhood, it was provided that a member of the brotherhood should not resort to the courts for relief with reference to any controversy arising within the organization without previously exhausting all of his remedies within the brotherhood.

█ It is a generally accepted rule in this as well as in all other states of the union that one who joins a beneficial association, such as is here under consideration, assents to and accepts the law of the order and impliedly binds himself to abide by its decisions in the determination of disputes arising within the society, and where provision is made in its constitution or by-laws for review within the society of the rulings and judgments of its officers of inferior lodges, such remedies must be exhausted before relief may be sought in a court. 5 Tex.Jur. 142; 6 Tex.Jur. 430; 5 C.J. 1364; 7 C.J. 112; Screwmen's Benefit Ass'n v. Benson, 76 Tex. 552, 13 S.W. 379; Sawtell v. Teser, Tex.Civ.App., 235 S.W. 960; Grand Lodge Colored K. P. v. Sanford, Tex.Civ.App., 289 S.W. 456; Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; Crisler v. Crum, 115 Neb. 375, 213 N.W. 366; Henry v. Twitchell, 286 Mass. 106, 189 N.E. 593.

█ Under the facts of the case here under consideration, the matter of adjusting the dispute between members of the brotherhood, who were employees of the Burlington-Rock Island and those of the railway companies involved, as to who should man the engines as engineers over the newly established route, was a matter well within the jurisdiction of the brotherhood. After the decision of May 19, 1937, apportioning the work as above indicated, the plaintiffs applied to the president of the brotherhood for a rehearing but sought relief in the courts before a rehearing could be concluded. In this connection, it is their contention that since the said O. K. Hedges, who had been appointed by the president to reinvestigate the matter, was the same man who had previously made the investigation forming the basis of the decision in May 1937, it necessarily appeared therefrom that he was so prejudiced that he could not have made a fair report, and, as a consequence, it would have been futile to wait for a report from him. We have examined the record very carefully and do not find any evidence to indicate that the said Hedges was possessed of such prejudice that he could not have rendered a fair report in the matter. The mere fact that he had made the previous report did not necessarily disqualify him to reinvestigate the matter. But even if it should be concluded that he was not a qualified individual to make the investigation, it does not necessarily result that the president of the brotherhood would not have reinvestigated the matter or ascertained the true facts from other sources and have rendered a fair decision therein. Moreover, plaintiffs, in the event the president had refused to reopen the matter, would have had a right to appeal to the Grand International Division, the triennial convention of the union, as provided in section 35(c), but they failed to exhaust such remedy before resorting to the court. Having thus failed to exhaust their remedies within the brotherhood, they were not entitled to resort to the courts for relief.

█ But if it should be conceded that the plaintiffs were not at fault in failing to exhaust their remedies within the brotherhood, they were not necessarily entitled to have the decision set aside in the courts, for there was no evidence of fraud, oppression or bad faith, and the ruling complained of does not appear to be otherwise illegal. The plaintiffs, under the rules of the brotherhood, had a right to have preserved the seniority rights pre-

viously earned by them while they were employees of the Trinity & Brazos Valley Railway Company. They were not entitled, however, to have such seniority rights preserved in the exact status over the same section of road in the event of merger of that section of road or a joint traffic arrangement with another road, but, as provided in section 35(b) above quoted, the same was subject to equitable adjustment over the new run. Having acquired their rights in the light of such a provision, such rights were subject thereto. The trial of the disputed matter appears to have been conducted in accordance with the rules of the brotherhood. Under the decision complained of, the members of the Burlington-Rock Island Railway Company, to which group the plaintiffs belonged, were required to surrender their exclusive right to man the trains over the route from Waxahachie to Teague, a distance of sixty-seven miles, and in return were allowed the right to man two-thirds of the trains over the entire route from Fort Worth through Dallas and Waxahachie to Teague, a distance of 131 miles. The value of the seniority rights previously earned by plaintiffs appear to have been preserved to them but readjusted to the new run on an equitable basis. The courts cannot undertake to regulate the decision of matters within the general purpose of the brotherhood such as is here under consideration, for to do so would destroy the very purpose of the order. There is nothing to indicate such inequities in this decision as to authorize us to say that the same is illegal and void. The trial court was therefore in error in granting the injunction complained of.

The judgment of the trial court is reversed and the injunction is dissolved.

### On Motion for Rehearing.

■ On the original hearing, we reversed and rendered the judgment of the trial court. In the motion for rehearing appellees suggest that the case has not been fully developed and we cannot say that the record conclusively shows the contrary. Under the circumstances, it becomes our duty to reverse and remand the cause for a new trial instead of rendering judgment for appellants. Lanford v. Smith, 128 Tex. 373, 99 S.W.2d 593; Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178. Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial. Appellees' motion for rehearing is in all other respects overruled.