GRAND INTERNATIONAL BROTHER-
HOOD OF LOCOMOTIVE ENGINEERS
et al. v. MARSHALL et al.

No. 2259.

Court of Civil Appeals of Texas. Waco.

Nov. 28, 1940.

Rehearing Denied Dec. 31, 1940.

Thompson, Knight, Baker, Harris & Wright, and J. Hart Willis, all of Dallas, for appellants.

L. W. Shepperd of Groesbeck, McGown, McGown, Godfrey & Logan, of Fort Worth, and Davis, Jester & Tyson, of Corsicana, for appellees.

ALEXANDER, Justice.

This is a second appeal of the same case. See Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex.Civ.App., 119 S.W.2d 908. The material facts were fully set out in the former opinion and it will not be necessary to repeat them in detail at this time. A brief statement will probably suffice for this opinion.

A dispute arose between the engineers of the Burlington-Rock Island Railway Company and those of the Chicago, Rock Island & Gulf as to who should man what is known as the "Zephyr" and the "Rocket" passenger trains being run from Fort Worth to Dallas over the C. R. I. & G. railway lines, from Dallas to Waxahachie over the M. K. & T. railway lines, and from Waxahachie to Teague over the B. R. I. railway lines. The matter was submitted to the proper committee within the Grand International Brotherhood of Locomotive Engineers, and an award was made awarding one-third of the service to the C. R. I. & G. employees and two-thirds to the B. R. I. employees. Walter Marshall and R. L. Strong, being dissatisfied with the ruling of the Board, brought this suit against Grand International Brotherhood of Locomotive Engineers and certain other parties to enjoin the Brotherhood from interfering with the plaintiffs' alleged seniority rights as railway engineers to man the trains in question. At the conclusion of the evidence, the trial court granted a permanent injunction as prayed. The defendants appealed.

At a former hearing, we reversed the judgment of the trial court and rendered judgment for defendants, but on motion for rehearing it was asserted that appellees' case had not been fully developed and that a better showing could be made on another trial. As a consequence, the case was remanded for a new trial. The

record does not appear to be materially different from that on the former appeal. We are of the opinion that the judgment of the trial court must be reversed and judgment here rendered for appellants for two reasons.

■ The appellees have not exhausted their remedies within the Brotherhood and have not satisfactorily accounted for their failure to do so. The Brotherhood of Locomotive Engineers is a voluntary association. Marshall and Strong are members thereof. The purpose of the association is to provide, among other things, for collective bargaining on the part of its members and to secure, regulate and protect their rights as railway employees. While seniority is determined by the length of service of each employee for the railway company by which he is employed and not by membership in the association, yet such seniority rights are preserved and protected exclusively by the Brotherhood. The rules of the Brotherhood provide a method for settlement within the association of disputes as to seniority and other rights among its members and prohibit a resort to the courts until the method provided for therein has been exhausted. The proper committees within the Brotherhood heard the dispute in question and entered its decree therein. The appellees were dissatisfied with the ruling and resorted to the courts without exhausting their right of appeal within the Brotherhood. The facts in this connection were fully stated in the former opinion of this court and need not be here repeated. The appellees did not materially improve their situation on a second hearing. The most that they did was to show that they would have experienced some delay if they had been required to appeal within the order, and that they would have suffered in the meantime because of lack of full time employment. The delay, however, was not such as to constitute a denial of justice. In fact, the delay which they would have suffered would not have been nearly as long as that which the Brotherood and those who are depending upon it to protect their seniority rights have suffered in the prosecution of this case through the courts.

■ The appellees by becoming members of the association and accepting its benefits impliedly bound themselves to abide by its decisions in the determination of disputes arising within the society and were bound to exhaust the remedies provided for therein before resorting to the courts for relief. 5 Tex.Jur. 142; 6 Tex.Jur. 430; 5 C.J. 1364; 7 C.J.S., Associations, § 34; 7 C.J. 1116, 10 C.J.S., Beneficial Associations, § 65; Screwmen's Benefit Ass'n v. Benson, 76 Tex. 552, 13 S.W. 379; Sawtell v. Feser, Tex.Civ.App., 235 S.W. 960; Grand Lodge Colored K. P. v. Sanford, Tex.Civ.App., 289 S.W. 456; Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; Crisler v. Crum, 115 Neb. 375, 213 N.W. 366; Henry v. Twichell, 286 Mass. 106, 189 N.E. 593.

It is true, as above stated, that appellees would have suffered some delay if they had been compelled to have exhausted their remedies within the order, but it should be remembered that whatever rights to seniority and service these men have are preserved to them exclusively by the Brotherhood, and that but for the Brotherhood their seniority rights would be worthless. In other words, their seniority rights are not created nor preserved by statute but solely through the Brotherhood. Therefore, they must be held to have anticipated the delay necessarily incident to the prosecution of their claim through the association which preserves to them their rights to seniority. If we were to hold that the Brotherhood did not have the right to regulate such matters and were to undertake regulation by injunction, we would destroy the association, and with it, its power of collective bargaining and render worthless the seniority rights of its members.

■ Moreover, we are of the opinion, as held in our former decision, that the appellees have failed to show that they have been deprived of any substantial rights by the ruling of the Brotherhood committee. The appellees are employees of the Burlington-Rock Island Railway Company and claim their seniority rights as such employees. The dispute is between them and the employees of the Chicago, Rock Island & Gulf Railway Company, herein called the Rock Island. The trains in question run from Fort Worth to Dallas over Rock Island tracks, from Dallas to Waxahachie over M. K. & T. tracks, and from Waxahachie to Teague over B.-R. I. tracks. The question before the committee was, which of such groups of employees should be permitted to man the trains in question? From 1908 to 1914, the T. & B. V. Rail-

way Company, the predecessor of the Burlington-Rock Island, operated a passenger service from Teague to Waxahachie over its own line and thence by lease agreements over the M. K. & T. line to Dallas and over the Rock Island line to Fort Worth. That train service, however, was discontinued in 1914. Sometime thereafter, the T. & B. V. Railway Company established a new passenger service from Teague to Fort Worth, using the tracks of the Southern Pacific from Waxahachie to Fort Worth. In 1930, the present lease agreement was entered into by which the Fort Worth & D. C. Railway Company and the Chicago, Rock Island & Gulf Railway Company secured the right to operate trains from Fort Worth to Teague via Dallas and Waxahachie, as heretofore set out. The trains, as distinguished from the tracks, belong to the Burlington-Rock Island, but are leased to and operated by the Fort Worth & Denver City Railway Company and the Chicago, Rock Island & Gulf Railway Company. The employees who operate such trains are paid by the Burlington-Rock Island Railway Company but 'the cost thereof is billed to and paid by the Fort Worth & Denver City Railway Company and the Chicago, Rock Island & Gulf Railway Company. The track from Fort Worth to Dallas, a distance of 34 miles belongs to the Chicago, Rock Island & Gulf Railway Company, but is jointly used under a trackage agreement by that company and the Fort Worth & Denver City. The track from Dallas to Waxahachie, a distance of 29 miles, belongs to the Missouri-Kansas & Texas Railway Company and is leased by the Fort Worth & Denver City and Chicago, Rock Island & Gulf Railway companies. The track from Waxahachie to Teague, a distance of 67 miles, belongs to the Burlington-Rock Island, but is likewise leased to the Fort Worth & Denver City and Chicago, Rock Island & Gulf. At the time the lease agreement was first entered into in 1930, there was no regular passenger service between Fort Worth through Dallas to Teague, but the freight service was awarded by the Brotherhood on a crew basis. The award recites that it was "anticipated that a minimum of four crews would be required in the beginning" and in anticipation thereof it was provided that in the event four crews were used two crews would be awarded

to B. R. I. employees, one crew to C. R. I. & G. employees, and one crew to F. W. & D. C. employees. Passenger service between Dallas and Teague was assigned to Burlington-Rock Island employees. In 1933, the matter was re-opened and a new decision rendered by the Brotherhood. At that time there was no regular through passenger service from Fort Worth through Dallas to Teague, but it was provided that all extra passenger service between such points should be apportioned one-third to Rock Island employees and two-thirds to Burlington-Rock Island employees. In 1936, through passenger service was established between Fort Worth and Teague over the route indicated. In 1937, the question of apportioning this service was re-opened and a decision was rendered apportioning this service one-third to Rock Island employees and two-thirds to Burlington-Rock Island employees. It is this last decision of which the Burlington-Rock Island appellees complain. It should be noted that the employees of the M. K. & T. Railway Company, over whose road a part of the route ran, were not asserting any right to any part of the mileage. In reaching its decision, the Brotherhood concluded that the 29 miles over the M. K. & T. leased tracks should be treated as neutral territory. The distance from Fort Worth to Dallas over Rock Island tracks is 34 miles, and the distance from Waxahachie to Teague over Burlington-Rock Island tracks is 67 miles. Consequently, the committee concluded that the through passenger service over the entire route should be apportioned one-third to Rock Island employees and two-thirds to Burlington-Rock Island employees.

It is apparent that the decision of the Brotherhood was not inequitable. If through service was to be established between Fort Worth and Teague, the rights of each of said groups of employees could not be preserved in its then exact status. This is true because the Railway Company could not be bothered with the necessity of changing crews every time the train passed from the tracks of one company to that of another. It was necessary for the matter to be readjusted in some way. Section 35b of the rules of the Brotherhood provide for such adjustment in the following manner: "(b) But wherever one railroad or any portion is absorbed, traffic diverted, consolidated.

merged, leased or co-ordinated by or with another railroad, the engineers on the road or roads or any portion thereof, affected thereby, shall retain their rights and seniority, as heretofore, on the roads absorbed, traffic diverted, consolidated, merged, leased, or co-ordinated but when it becomes necessary to readjust the service of the roads affected, the runs shall be manned by engineers of the respective roads in proportion as near as practicable to the mileage run on the territory of each road, * * *."

The committee complied with the provisions of the above rule in as practicable and equitable manner as was possible. The appellees were members of the Brotherhood and had therefore bound themselves to be governed by such rule. Since there was no inequity in the ruling of the committee, appellees are not entitled to have same set aside in the courts.

The judgment of the trial court is reversed and the injunction is dissolved.