John O'Keefe et al., Respondents, *v.* Local 463 of the United Association of Plumbers and Gas Fitters of the United States and Canada et al., Appellants.

Argued January 11, 1938; decided March 8, 1938.

*J. G. Fink, Ernest Frederick Eidlitz* and *Harry N. French* for appellants. The action of the executive board and that of the union was in pursuance of the action of the joint arbitration board, whose decision was within its jurisdiction and was binding upon the plaintiffs. This decision was not a penalty. It merely prescribed a course of procedure to adjust a controversy. (*Mandell* v. *Moses,* 239 N. Y. 555; *Mandell* v. *Cole,* 244 N. Y. 221; *Cross Mountain Coal Co.* v. *Ault,* 157 Tenn. 461; *Whiting Milk Co.* v. *Grondin,* 282 Mass. 41; *Nederlandsch Amer. S. M.* v. *Stevedores' & L. B. Society,* 265 Fed. Rep. 397; *Yazoo & M. V. R. Co.* v. *Webb,* 64 Fed. Rep. [2d] 902; *Maisel* v. *Sigman,* 123 Misc. Rep. 714; *Polin* v. *Kaplan,* 257 N. Y. 277; *Matter of Pratt* v. *Rudisule,* 249 App. Div. 305.) The action of the union was in good faith and in the best interests of the members of the union as a whole and necessary for its welfare and within the expressed and implied purposes of the union and was, therefore, within and authorized by its constitution. The complaint should have been dismissed without regard to the power of the arbitration board. (*Helvering* v. *Davis,* 81 L. Ed. 804; *Polin* v. *Kaplan,* 257 N. Y. 277; *Matter of Haebler* v. *New York Produce Exchange,* 149 N. Y. 414; *Brownfield* v. *Simon,* 94 Misc. Rep. 720; 174 App. Div. 872; 225 N. Y. 643; *Shaup* v. *Grand International Brother-*

hood, 223 Ala. 202; *Simpson* v. *Engineers*, 83 W. Va. 355; *Edgar* v. *Halpin*, 185 N. Y. Supp. 307; *M'Culloch* v. *Maryland*, 4 Wheat. 316; *Nebbia* v. *New York*, 291 U. S. 502; *Wabash R. R. Co.* v. *Hannahan*, 121 Fed. Rep. 563; *Bossert* v. *Dhuy*, 221 N. Y. 342; *Willcutt & Sons Co.* v. *Driscoll*, 220 Mass. 110; *Ryan* v. *Hayes*, 243 Mass. 168.)

*Charles S. Scholnicoff* for respondents. The action of the defendants in ordering the plaintiffs to leave their positions was arbitrary, unwarranted and without authority under the union's constitution, by-laws and rules of order. (*Polin* v. *Kaplan*, 257 N. Y. 277; *Blek* v. *Wilson*, 237 App. Div. 712; 262 N. Y. 253; *Shouten* v. *Alpine*, 77 Misc. Rep. 19; *Connell* v. *Stalker*, 21 Misc. Rep. 609.)

LEHMAN, J. The plaintiffs are, and have been for many years, members in good standing of the defendant labor union. They are employed by the Byrne Company, a corporation engaged in business in the city of New York as a master plumber and a member of the Association of Master Plumbers of the City of New York, Manhattan Branch, Inc. The defendant union and the Master Plumbers Association have a working agreement which fixes, in detail, hours of labor, rate of wages and working conditions. In November, 1934, charges were preferred that the Byrne Company, Inc., was paying one Louis De Lustra, a plumber's helper, less than the wages fixed in the working agreement. The charges were heard by the Joint Arbitration Board, established in accordance with the working agreement to hear such charges. It sustained the charges and adopted a resolution to the effect that all plumbers and helpers be furnished to the Byrne Company, Inc., by Local 463, the defendant union, for a period of three years. Thereupon the executive board of the local union recommended that " all plumbers and helpers working for the Byrne Company be removed from the shop for one year." That recommendation was approved by Local Union 463 at a

regular meeting. The result of these proceedings is that, though no charges have been preferred against the plaintiffs, they have lost, at least temporarily, jobs which they have held for long periods.

Claiming that the action of the labor union was arbitrary, unreasonable and without authority under its constitution and by-laws, the plaintiffs have, in this action, sought and obtained a judgment restraining the defendants from "prohibiting the plaintiffs' former employer, the Byrne Company, Inc., from rehiring the plaintiffs to their former positions as plumbers," and awarding to the plaintiffs damages for loss of wages while they were unemployed. To determine whether the action of the defendant union was arbitrary and unreasonable, we must examine the facts established at the trial and found by the court; to determine whether the action of the union was authorized, we must analyze the constitution and by-laws and construe them in the light of the facts established and found.

The court has found that in 1931, when many plumbers, members of the union, were unemployed, some members of the Master Plumbers Association and other employers in the building industry started the practice " of paying to their employees, including members of Local 463, less wages than are provided to be paid by working agreements, which practice has been called in the building trades and elsewhere ' paying cheap money.' " The court also found " that the effect of paying ' cheap money ' is injurious to those employers, members of the Master Plumbers Association who live up to the working agreement and pay the agreed scale, in that they are not able to compete for jobs with the employer who bases his estimate on paying ' cheap money.' That the effect of paying ' cheap money ' is injurious to the members of Local 463 who live up to the working agreement in that they are not able to compete for jobs with those members of Local 463 who are willing to violate the agreement and work for less than the agreed wage."

The constitution and by-laws of the defendant union define the relations of the union and its members; the powers of the union officers and committees and the rights of the members. The preamble of the constitution of its parent body, the international union, provides among other things that: " The objects of this Association are to protect its members from unjust and injurious competition and secure unity of action among all workers of the trades throughout the United States and Canada * * *. Recognizing the right of the employer or capitalist to control his capital, we also claim and will exercise, the right to control our labor, and be consulted in determining the price paid for it * * *. For the successful accomplishments of the ends decreed by the Association, for the instruction, information and guidance of its members and for the due regulation of the business connected therewith, this code of laws is hereby formed." The constitution of Local Union No. 463, the defendant union, sets forth among its objects: " Section 2. To protect our members from unjust and injurious competition and to secure unity of action for their mutual protection and support. Section 3. To assist our members in obtaining employment and retaining same for a just, fair and equitable remuneration. Section 4. To establish and maintain a minimum standard of daily wages. Section 7. To elevate by legal and proper means, the moral, intellectual and social conditions of our members and to promote and foster, just and equitable action in all dealings with each other, and our employers."

It is plain that collective bargaining to achieve these objects is one of the purposes of the defendant union. The working agreement is intended to bind members of the Master Plumbers Association collectively and members of the defendant union collectively. The validity of that agreement is not challenged. It not only fixes hours of labor, rates of wages and conditions of employment, but it provides machinery for the hearing of charges,

the adjustment of grievances and the settlement of disputes. For that purpose it establishes a Joint Arbitration Board, to which all grievances and disputes must be referred. Committees of five members each, appointed by the parties to the working agreement, are to form the Joint Arbitration Board, with full power to act for the Association of Master Plumbers and Local No. 463. The decision of the Joint Arbitration Board is to be " final and binding " on all parties to the agreement.

The working agreement provides also that " all parts of the Constitution and By-Laws of either Association in conflict with this Agreement are by mutual consent repealed, and this Agreement governs in all matters stipulated." We need not consider whether the agreement could, of its own force, repeal any part of a constitution or by-laws. No provision in the constitution or by-laws of the union has been pointed out to us which is in conflict with the agreement and there are provisions which recognize the existence of the agreement and are intended to implement it. Thus the constitution of the union provides, among other things, that its executive board shall " perform all the duties of the Arbitration Board as follows: It shall be the duty of the Executive Board to attend all meetings of the Joint Arbitration Board, report all infractions of the agreement to the Local Union of said Board for action thereon, and have general supervision of the local union in that body."

The decision of the Joint Arbitration Board sustaining the charges against the Byrne Company, Inc., is final, and the plaintiffs do not deny its binding force. Under the terms of the working agreement the Joint Arbitration Board had no power to impose a penalty upon the guilty employer, for the working agreement provides that " in case parties tried by the Joint Arbitration Board shall be declared guilty, the respective Association of which he is a member shall determine the penalty." The evidence shows that penalties imposed upon employers who paid

" cheap monies " were ineffective. In spite of penalties imposed the practice continued. The union urged that the way to end the practice was to give the union the right to remove all plumbers and place all new men in a shop where the employer had been found guilty. After that suggestion had been accepted in one or two cases by the representatives of the Master Plumbers Association the practice ceased.

Even though the resolution of the Joint Arbitration Board that " all plumbers and helpers be furnished to the Byrne Company, Inc., by Local 463 for a period of three years " may have been for the best interests of the members both of the union and of the Master Plumbers Association, yet there may be some doubt as to whether the two organizations had delegated to the Joint Arbitration Board the power to make such a decision. The result of the resolution is to deprive the Byrne Company, Inc., of freedom to chose its own employees because it has been found guilty of abuse of that freedom. In that aspect, the result is analogous to a penalty, and the Master Plumbers Association had reserved the right to fix the penalty whenever one of its members might be found guilty of charges preferred against him. On the other hand, the practice by employers of paying less than the agreed rate of wages constituted a continuing grievance. It was injuring the members of both organizations and both organizations were interested in ending the practice. A refusal by the union to permit its members to work for the delinquent employer might end the practice but might lead to conflict with the Master Plumbers Association. The resolution of the Joint Arbitration Board is a device calculated to end the practice and settle the grievance. In that aspect it is not a penalty, and, it may be argued, falls within the powers delegated to the Joint Arbitration Board.

We need not, however, decide upon this appeal whether, in adopting the resolution, the Joint Arbitration

Board exceeded the powers delegated to it, for, even assuming that the Joint Board did exceed its powers, the union might, if it chose, ratify its action. The plaintiffs complain of the action taken by the labor union, of which they are members, to give force and effect to the resolution of the Joint Arbitration Board. They cannot complain of the resolution itself. Their grievance is not that all plumbers and helpers be furnished to the Byrne Company by Local 463 for a period of three years, but that " all plumbers and helpers working for the Byrne Company be removed from the shop for one year."

The resolution so providing was, as we have already pointed out, recommended by the executive board of the union and approved by the union at a regular meeting. The court has found that this action of the union was " taken *solely* for the purpose of trying to stamp out the vicious practice of paying ' cheap money.' " The court also found that this action was " taken in good faith and without malice   *   *   *   and was for the best interests of the members of Local 463 as a whole and *necessary* for the welfare of the union." (Italics are new.)

The plaintiffs have committed no wrong and no charges have been preferred against them. The action of the union in removing them for one year from the shop where they have been long employed has caused great damage and hardship to them without any fault on their part. That damage has not been imposed as a penalty for wrongdoing nor with any malice towards them, but solely to promote the welfare of the union and achieve the objects for which the union was formed. The findings establish that the action of the union was not only reasonably calculated to advance the objects of the union but was, indeed, necessary for its welfare. The question presented upon the appeal is whether under its constitution and by-laws the union has power and right to take action reasonably calculated to advance its objects, even

though such action involves interference with the employment of a member who has committed no wrong and against whom no charges have been preferred.

This court has frequently sustained the right of labor unions to interfere by lawful means between an employer and his employees who are not members of the union where the purpose of such interference is solely to advance the interest of the members of the union. We have not been oblivious of the consequent hardship imposed, at times, upon individual employers or employees, but for hardship to the individual resulting from action reasonably calculated to achieve a lawful end by lawful means the courts can give no redress. The plaintiffs, in joining the union, agreed to its objects and submitted themselves to its powers. Its declared objects included the establishment and maintenance of a minimum standard of wages, the improvement of the social condition of its members and the promotion of just and equitable action in all dealings. All these objects were threatened by the practice of certain employers and members of the union. The union has adopted a measure which, the court has found, was necessary for its welfare. That measure was approved by the members of the union at a regular meeting. The constitution and the by-laws of the local union and its parent body were devised for the " successful accomplishments of the ends desired by the Association " (the international); and in the constitution and by-laws of the local authority may be found for the action taken by the local. The right of the association to take such action is certainly not weakened by the fact that it was recommended by the Joint Arbitration Board, established by the working agreement with the Master Plumbers Association, and is calculated to benefit employers as well as members of the union. Except as otherwise provided in the constitution and by-laws a member of a union has no more right than a non-member to complain of hardship caused to him by a union acting lawfully.

The constitution and by-laws of the union carefully protect its members from deprivation of *membership rights* or other form of punishment where there has been no trial properly conducted upon charges properly presented. These provisions have no application here. The plaintiffs have not been charged with any wrong and have not suffered any deprivation of membership rights. The right to retain a job is not a membership right. The welfare of the union required that the union should exercise control of employment in a shop where there had been a violation of the working agreement and in the exercise of that control without malice to the plaintiffs others have been employed in place of the plaintiffs. Of that the plaintiffs cannot complain. The objects sought by a union and the " unity of action " to achieve them cannot be attained without some harm to the individual. The tests of whether the law affords redress for such harm are the legality, good faith and freedom from malice of the union. The findings of the court establish that here the action of the union meets these tests.

The plaintiffs have violated no provision of the constitution or by-laws by appeal to the courts. The provisions relied upon by the defendant union in that respect have no application here. Indeed, by seeking an authoritative determination of the rights and powers of the union they have probably rendered a service to the union.

The judgments should be reversed and the complaint dismissed, without costs.

CRANE, Ch. J., LOUGHRAN and FINCH, JJ., concur; O'BRIEN and RIPPEY, JJ., dissent; HUBBS, J., taking no part.

Judgments reversed, etc.