## BROTHERHOOD OF RAILROAD TRAINMEN et al. v. PRICE et al.

### No. 10741.

Court of Civil Appeals of Texas.
Galveston.

March 1, 1939.

Rehearing Denied March 23, 1939.

Charles Murphy, of Houston, and Tom J. McGrath and W. A. Endle, both of Cleveland, Ohio, for appellants.

Bernard A. Golding, of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal from a temporary writ of injunction issued by the Judge of the 56th District Court of Galveston County, commanding appellants, Brotherhood of Railroad Trainmen and other parties defendant, not necessary to be here mentioned, to cancel or annul a bulletin or order dated October 13, 1937, and restraining appellants from issuing any other orders by the terms of which appellees, W. L. Price, P. H. Waters, F. A. Llewellyn, and R. H. Martin, would be deprived of their alleged prior rights to man all trains over the trackage of the G. H. & H. Railway Company between Galveston and Houston.

This is the second appeal of this case from judgments rendered by the 56th District Court of Galveston County. The first appeal, which is reported in 108 S.W.2d 239, writ of error dismissed, was from an order granting a permanent injunction. The case was reversed and remanded by a majority opinion of this court for the purpose of making other train service employees, who would be adversely affected by a judgment favorable to appellees, parties to the suit.

Shortly after the dismissal of the writ of error in the first appeal, the appellees instituted this suit making the necessary parties parties-defendant, and secured a temporary injunction, from which order appellants, defendants below, have appealed.

By agreement of the parties the transcript of the evidence and all exhibits introduced at the former trial are made a part of the record in this appeal.

The appellees, W. L. Price, P. H. Waters, and R. H. Martin, are members of the Brotherhood of Railroad Trainmen.

F. A. Llewellyn was a member of the Brotherhood up to the year 1931, when his membership was dropped. He was not a member at the time of the filing of either of the suits involved in this appeal. Price has been a member since 1906, Waters since 1908, Llewellyn since 1906, and Martin since 1911. Under the rules of the Brotherhood each had acquired rights to man trains over the G. H. & H. Trackage.

Appellant Brotherhood of Railroad Trainmen is an unincorporated voluntary association of Railway trainmen, organized for the purpose of promoting the welfare and advancing the interests of its members as Railway employees. As such, it makes contracts with Railway Companies for and on behalf of its members, providing for rates of pay, terms and conditions of employment, and determines the rights of its members to man various trains operated by the companies with whom it contracts, and regulates and protects their seniority rights.

There is little controversy as to the material facts proved on either appeal. In the first appeal the trial court filed findings of fact. In the present appeal certain fact findings are embodied in the judgment rendered.

Briefly stated, the facts necessary for an understanding of this appeal are substantially as follows: The trackage of the G. H. & H. Ry. Co. extends only between Galveston and Houston. Its stock is owned by the I. & G. N. and M. K. & T. Railway Companies in equal shares. Up to the time of Government operation of railroads, each of said three railroads use the G. H. & H. trackages. On March 1, 1920, the G. H. & H. Ry. Co. discontinued the active operation of trains and advised its engine and train service employees that from that date its trackage would be used exclusively by the M. K. & T. and I. & G. N. Railroads. An appeal was immediately made to the Transportation Brotherhoods, of which they were members, by the engine and train service employees of the three railroads, including appellees, for a ruling as to their respective seniority rights under said new arrangement. After an exhaustive investigation a ruling was handed down by the Chief Executives of the four Transportation Brotherhoods on November 18, 1920, which provided, in substance, that the train service employees of the G. H. & H. Ry. Co., including appellees, should have prior rights, in accordance with their seniority in the G. H. & H. Railway Company, to any service operated exclusively between Galveston and Houston, which was then being operated in alternate years by the I. & G. N. and M. K. & T. Railroads, two of appellees being placed on the roster of the I. & G. N. and two on the roster of the M. K. & T., to begin accumulating seniority rights as of March 1, 1920.

Later, by reason of falling off of business, the management of said two railroads ordered the freight service between Galveston and Houston cut to one train a day, which train would handle all local and through freight business between Galveston and Houston. A controversy again arose between the former G. H. & H. employees, appellees herein, and the train service employees of said two railroads, members of the subordinate lodges of the Brotherhood of Railroad Trainmen, as to who should man this train. In December, 1934, the President of the Brotherhood of Railroad Trainmen ruled that appellees should be given the right to man the train one-half of each year, and that the employees of the other two railroads should be given the right to man the train the other half of the year. Appellees immediately thereafter secured an injunction restraining the Brotherhood and its officers from carrying said ruling into effect.

On reversal of the judgment in said first appeal, appellants on October 13, 1937, caused an order to be issued which would have reduced appellees' terms of employment to a period of six months each year. Appellees contended that under the ruling and agreement of November 18, 1920, they were entitled to exclusive rights to man all trains over the G. H. & H. trackage for the entire year, and immediately, on October 28, 1937, entered their protest to said order in the form of a telegram to A. F. Whitney, President of the Brotherhood of Railroad Trainmen, and received an immediate reply from him by letter, dated October 29, 1937, suggesting that they file their complaint with the Grievance Committee. He assured them that their complaint would be given merited attention.

Appellees took no further action toward securing an investigation of their claim or a ruling thereon, and took no action toward perfecting an appeal of their grievance through the machinery set up therefor under the rules of the Brotherhood, but immediately instituted this action and secured the temporary injunction above referred to, which has prevented further

action being taken by appellants to man said trains up to this time. Appellants, defendants below, have appealed from the order of the court granting said temporary injunction.

Appellees contend that the order or ruling made on November 18, 1920, by the Chief Executives of the four Transportation Brotherhoods, was a binding contract and agreement between themselves and the Brotherhood of Railroad Trainmen, giving them, so far as their number permitted, exclusive right to man all train service over the G. H. & H. trackage, and that said right was a vested property right over which appellants had no control and had no legal right to disturb. They further contend that they did all that they could reasonably have been expected to do toward exhausting the remedies provided by the association.

We are unable to sustain either of these contentions. In its final analysis, the decisive question involved in this appeal is whether, since the rights given appellees under the ruling of November 18, 1920, were accorded appellees by virtue of their membership in the Brotherhood, the Brotherhood had the right, under changed conditions, to readjust the status of appellees' employment under what the duly constituted authorities of the Brotherhood considered to be an equitable basis, subject to the rights of appellees to appeal from such decision through the agency set up for that purpose by the Brotherhood.

It is held in the case of Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex.Civ.App., 119 S. W.2d 908, 910, writ refused, under a state of facts similar in many respects to those in the instant case, that "it is undisputed that the plaintiffs are members of and subscribers to the constitution and by-laws of said brotherhood and that whatever seniority rights they enjoyed emanate from said brotherhood and are secured to them exclusively by virtue of their membership therein and not by virtue of any contract between them and any of the various railway companies mentioned. The various railway employees here involved, by joining the brotherhood and accepting the benefits thereof, thereby subjected themselves to all reasonable rules and regulations of the brotherhood as to matters within the jurisdiction thereof, and are bound by its decisions therein so long as such decisions are in accordance with the rules thereof, and not otherwise illegal." The general rules of the Brotherhood of Railroad Trainmen not only provided for seniority rights for its members when through lease, purchase, or otherwise, a line of railway is taken over for operation purposes, but they have provided very definite and effective machinery for an appeal by a member of the Brotherhood who may consider that he has been deprived of his seniority rights or that he has been otherwise unjustly dealt with.

The following general rules are provided by the Brotherhood for the appeal of grievances by its members within the association:

"No. 5. Any member considering that he has been unjustly dealt with by his employer, or that he is otherwise aggrieved, shall make a statement of the grievance in writing and present the same at a meeting of the lodge. The lodge shall then determine by a majority vote of the members present, employes of the division, whether to sustain or reject the grievance. Should the grievance be sustained, the lodge will then authorize either the local chairman or the local grievance committee to lay the matter before the trainmaster, superintendent, or other proper officer, and use every means to effect a satisfactory settlement, and report his or their action and all things pertaining to the case to the lodge. If the result is not satisfactory, it may be referred to the general grievance committee for further action. A member or a lodge may withdraw a grievance placed in the hands of a general grievance committee, provided such action is taken before said grievance has been presented by the general grievance committee to the officer of the company, but not thereafter. On small systems where the office of salaried chairman is maintained, upon the request of all lodges on such systems, the President of the Brotherhood may issue dispensation permitting the General Chairman to handle local grievances."

"No. 5½. A member believing that an injustice has been done him by his lodge accepting, or rejecting, a grievance which has been submitted by himself or other member of the lodge, may appeal from such action to the President of the Brotherhood in the following manner: Within sixty days from the time the verdict is rendered. the appellant shall prepare in writing a statement fully giving the facts upon which the appeal is based, a copy of which will

be sent to the secretary of the lodge, who will forward to the President of the Brotherhood a copy of the grievance with all the facts pertaining to the grievance and action of the lodge. Upon receipt of this information the President will render a decision. Should the member consider the decision of the President of the Brotherhood unjust, an appeal to the Board of Directors may be taken, and if such a decision is not satisfactory, an appeal to the Board of Appeals may be taken, whose decision shall be final. Appeals to the Board of Directors, or to the Board of Appeals, must be made in writing, fully setting forth the basis upon which the appeal is taken, and must be filed with the General Secretary and Treasurer within sixty days after the decision has been rendered. The General Secretary and Treasurer will present under seal and signature all papers pertaining to the case to the Board of Directors or to the Board of Appeals. In the event of the death of a member prosecuting an appeal, the lodge of which he was a member shall have the right to delegate a member to continue the prosecution of such appeal."

"No. 7. When the local · chairman or grievance committee fails satisfactorily to adjust any grievance referred to it, as provided in the foregoing rules, and if the lodge so orders it, the secretary of the lodge shall immediately send a certified copy of the grievance to the chairman of the general grievance committee, and a duplicate copy of the grievance to the President of the Brotherhood. It shall be the duty of the chairman of the general grievance committee, on receipt of certified copy of grievance, to appoint a time for the consideration of the grievance, and to summon the secretary of the general grievance committee, and the chairman of the local grievance committee of the lodge where the grievance exists, to meet with him at an appointed time, in the city where the headquarters of the general superintendent or the general manager of the railroad, for that part of the system on which the grievance exists, is located. A committee thus constituted shall have power to alter, amend, add to or strike out any part or all of any complaint or claim submitted to the committee, subject to appeal to the entire General Committee, Board of Directors and Board of Appeals. A general Grievance Committee may authorize their Chairman to handle all grievances received from local lodges with the management for settlement, failing in this, he will so report to the Secretary of the General Grievance Committee and the Chairman of the Local Lodge where the grievance exists to determine further handling."

From the above rules in reference to appeals, it is evident that complete machinery has been set up within the organization for a thorough investigation and appeal from any order or ruling by the association concerning which a member may have a grievance.

Further quoting from the case of Grand International Brotherhood of Locomotive Engineers v. Marshall, supra: "It is a generally accepted rule in this as well as in all other states of the union that one who joins a beneficial association, such as is here under consideration, assents to and accepts the law of the order and impliedly binds himself to abide by its decisions in the determination of disputes arising within the society, and where provision is made in its constitution and by-laws for review within the society, or the ruling and judgments of its officers of inferior lodges, such remedies must be exhausted before relief may be sought in a court." Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex.Civ.App., 119 S. W.2d 908; 5 Tex.Jur. 146; 6 Tex.Jur. 430; 5 C.J. 1364; 7 C.J. 112; Screwmen's Benevolent Ass'n v. Benson, 76 Tex. 552, 13 S.W. 379; Sawtell v. Feser, Tex.Civ. App., 235 S.W. 960; Grand Lodge, Colored, K. P. v. Sanford, Tex.Civ.App., 289 S. W. 456; Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; Crisler v. Crum, 115 Neb. 375, 213 N.W. 366; Henry v. Twichell, 286 Mass. 106, 189 N.E. 593.

It is undisputed that appellees, with the exception of Llewellyn, are members of and subscribers to the constitution and by-laws of the Brotherhood of Railroad Trainmen, and that whatever rights were accorded them under the agreement and ruling of November 18, 1920, were secured to them exclusively by virtue of their membership therein, and not by virtue of any contract between them and any of the Railroad Companies mentioned therein. It is further uncontroverted that appellees took no action whatever toward perfecting an appeal, or having their alleged grievance over being deprived of their right to man trains over the G. H. & H. trackage the entire year investigated, outside of sending the message above referred to to A. F. Whitney, President of the Brotherhood of Rail-

road Trainmen, on October 28, 1937. In reply to said telegram of protest, appellees received the following letter from the said A. F. Whitney, dated October 29, 1937:

"Mr. P. H. Waters, 4006 Rotman Street, Houston, Texas.

"Dear Sir and Brother: This will acknowledge receipt of your night letter of the 28th inst., which also carries the signature of Brothers W. L. Price, F. A. Llewellyn and R. H. Martin, reading as follows:

"'Protest message, order or bulletin signed C. A. Birge, issued about October 13, 1937, relieving and displacing undersigned from train service G. H. & H. Railway stop The season March 4, 1932, as well as 1934, provides undersigned shall receive continuous employment under present existing conditions stop We rely upon 1920 agreement, but 1932 and 1934 agreements provide we be given continuous employment stop Request immediate reply this protest.'

"In the absence of having more detailed information regarding your complaint, I am not in position to comment, and again the Grand Lodge does not have jurisdiction in questions of grievance in the absence of such questions reaching the undersigned through the General Committee after such Committee has failed to make settlement. I would suggest, therefore, that your complaint be prepared in writing and presented to your lodge for handling by the Local and, if necessary, the General Grievance Committee, as contemplated by our law. If you will do so I am sure the complaint will be given the attention which it merits.

"(signed) A. F. Whitney."

Appellee Waters testified that he did not file a written grievance with his local lodge, and the record disclosed that no action was taken, and that no attempt was made by any of the other appellees to file a grievance with the proper agencies set up by the Brotherhood for an appeal in the event of a refusal or rejection of their grievance by their local lodge, or any subordinate agency of the association. In answer to the question as to whether he intended to make a grievance to his local lodge, he answered that he had not made a grievance and that he did not intend to do so, for the reason that it would not be any use.

■ We are unable to sustain appellees' contentions that they were justified in failing to perfect their appeal under the rules of the Brotherhood of Railroad Trainmen before resorting to the courts.

██ Appellees had the right of appeal from the action of their local lodge in the event of its rejection of their grievance, (1) to the President of the Brotherhood, (2) to the Board of Directors of the Brotherhood, and (3) to the Board of Appeals· of the Brotherhood, any and all of which appellate tribunals had full authority under the laws of the Brotherhood to redress their grievances. Having thus failed to exhaust their remedies in the Brotherhood, they are not entitled to resort to the courts for relief, since it is the accepted rule in this state that the courts will not interfere with the orderly administration of the internal affairs of an unincorporated association unless the laws of the association make no adequate provisions for the determination of grievances or where a party has been deprived of his rights by reason of fraud, oppression or bad faith. There is no evidence of fraud or bad faith, and the record shows an adequate and complete method within the association for the determination of grievances.

This court in the case of Sawtell v. Feser et al., 235 S.W. 960, 961, in a case in which the issues are similar to those involved in this appeal, held: "In these circumstances we do not think any right lay in them to hale their superior officers into the civil courts, but that they were in duty bound to prosecute the matter through the procedure provided for the purpose by and within their own organization. It is not our understanding that in controversies of this character the mere involvement of a property right or even the existence of a by-law the court might hold void in the absence of provision for an appeal within the association, justifies the application of judicial power; but that the internal remedies provided by the order must still be first exhausted."

Under the facts in this case, the courts are not authorized to pass on the rights of the parties such as are here under consideration, since these matters are within the general purpose of the Brotherhood. To do so would destroy the purpose for which the Association was created.

For the reasons above stated, the judgment of the trial court is reversed and the injunction is dissolved.

Judgment reversed and injunction dissolved.

GRAVES, Justice (concurring).

I agree to the judgment rendered, on the sole ground that the appellees did not—with reference to the order of October 13 of 1937—pursue their grievance through the machinery set up by the Brotherhood, although entertaining some doubt as to whether the prosecution of that remedy was *still obligatory upon them*, despite the pendency of the controversy in the trial court.