**C. L. PAIT et al., Appellants,**

**v.**

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, et al., Appellees.**

No. 13358.

Court of Civil Appeals of Texas.

Houston.

Feb. 19, 1959.

Rehearing Denied March 23, 1959.

See also, 322 S.W.2d 349.

Frederick W. Robinson, Houston, for appellants.

Robert C. Eckhardt, Houston, James P. Wolf, Corpus Christi, and Ryan, Eckhardt & Adams, Houston, and Sewall Myer, Houston, of counsel, for appellees.

BELL, Chief Justice.

This is essentially a controversy between Local No. 74 of the defendant International and International involving the question of the authority, under the given circumstances, of International to form a District Union occupying the territory of Locals 74, 577 and 132. The trial court sustained a plea in abatement setting up that plaintiffs could not maintain this suit because they had not exhausted inter-or-

ganization remedies provided in the International constitution.

The plaintiffs, who are appellants here, are all members of Local No. 74. Plaintiff C. L. Pait is vice president and a member of the Executive Board of said Local. Plaintiff J. W. Langham is recording secretary and a member of the Executive Board. Plaintiffs Alfred H. Wendelken, Sidney Fowler and J. E. McKnight are members of the Executive Board. The remaining plaintiffs are rank and file members of Local 74.

The defendants, who are appellees here, are the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, District Lodge No. 60, W. A. Calvin, president of International, Joe P. McCollum, vice president of International, Orval C. Logue, business manager of District Lodge No. 60, John T. Kirtley, president of Local No. 74, and serving as dispatcher for District No. 60, and Leeland F. Head, business manager and financial secretary of Lodge No. 74 and alleged to be serving as a quasi-official of District No. 60.

In the petition it is alleged that on May 9, 1958, W. A. Calvin, International president, in conjunction with the Executive Council of International, which Council consists of the president and 16 International vice-presidents, resolved to place subordinate Lodges Nos. 74, 132 and 577 under International supervision, abrogating local self-government, and to form District Lodge No. 60. One week later W. A. Calvin ordered each local to make a loan of $2,000 to the District; ordered all field dues to be paid to the District, and since May 15 said field dues have been paid to the District instead of the Locals.

About June 2, Orval C. Logue, business manager for the District Lodge, removed the books and records of Local 74 without the sanction of the officers and members of Local 74. The next week the field dues, receipt books, the work order books and the steward report books were likewise removed. After this the members of Local No. 74 were no longer dispatched to their jobs by the Local but by the dispatcher for District 60. In consequence of this the job selection system of the Local was scuttled. It is alleged that though many members of Local 74 were unemployed District No. 60 is allocating jobs within the territorial limits of Local 74 to members of Local 132, which is at Galveston, and Local 577, which is at Corpus Christi. They allege No. 132 has a large number of members because it is under International trusteeship and International took into the Local many inexperienced and unskilled members in order to take in large initiation fees.

Plaintiffs allege that on or about May 5, 1958, John T. Kirtley, president of Local 74, and Leeland F. Head, business manager and financial secretary of Local 74, and an unnamed representative of Local 74, went to International headquarters as delegates of Local 74. While there, Kirtley and Head, without the knowledge or concurrence of plaintiffs and those similarly situated, refused to seat the other delegate and entered into a conspiracy with Calvin, Logue, McCollum and others unknown to plaintiffs to place Locals 74, 132 and 577 under International supervision and to create District Lodge No. 60, wholly contrary to the best interests and welfare of the subordinate lodges. Logue and Kirtley became the instruments in subjugating the Locals to International and District 60, completely eradicating any trace of local autonomy.

Article V of the International constitution, they say, purports to give the International president authority to create District Lodges and consolidate subordinate lodges, which is the net effect of what defendants have done. However, they say that the constitution provides if such action is taken the members of the Local shall be given notice of the charges against them and notice of a hearing and an opportunity to be heard. They deny any such notice or an opportunity to be heard. They do

allege, however, that Kirtley and Head met with the International president and the Executive Council on or about May 5, 1958, with regard to the consolidation and supervision, but allege this did not amount to a hearing because Head and Kirtley were in collusion with the persons seeking consolidation and supervision of Local No. 74. Plaintiffs assert their property has been confiscated and they are now compelled to pay monies to the defendants. They say they have been denied due process of law in not being given a hearing.

Plaintiffs allege that Article VIII of the International constitution, which gives the International president, in conjunction with the Executive Council, authority to form District Lodges for mutual protection and to provide harmony between different lodges and shops, is invalid because it is arbitrary and capricious and violates due process because it affords the subordinate lodges and their members no right to be heard in opposition. Further it does not provide for election of officers by members, but the officers are appointed by International.

There are general allegations that monies of their Local Lodge have been confiscated and all field dues are appropriated by the District. In addition, plaintiffs complain that their jobs must now be obtained through the District and they have no bona fide representative in District No. 60.

Plaintiffs affirmatively allege there is no disharmony justifying placing Local 74 under International supervision and there is no need for the protection of a district lodge.

There is an assertion that the action of the defendants is in furtherance of a conspiracy and is designed for the personal aggrandizement of defendants.

Plaintiffs allege they will suffer irreparable injury and hardship in the following respects:

1. Defendants will use money and properties of Subordinate Lodge 74 for their own purposes rather than for the benefit of the subordinate lodge.

2. The assets of the subordinate lodge will be depleted and may be sold, mortgaged, encumbered, disposed of, destroyed or placed beyond the jurisdiction of the court.

3. The field dues, which rightfully belong to Subordinate Lodge No. 74, will continue to be taken and used by defendants for their own purposes.

4. The employment opportunities of the members of the Local Lodge will be severely curtailed by the influx of workers from the other subordinate lodges under District 60, and the members of Local No. 74 will be subjected to unjust discrimination in job assignment.

5. The members of the Local will be deprived of the right to hold meetings, elect their officers and manage and conduct their local affairs.

Plaintiffs allege they have no adequate legal remedy. Too, they allege the absence of adequate remedy within the structure of International as an appeal to the Executive Council of International would be futile because it is presided over by W. A. Calvin, International president who ordered the creation of District No. 60, and further the Executive Council is the same body that acted in conjunction with the president in ordering the creation of District No. 60.

By trial amendment plaintiffs allege that on or about July 2, 1958, Leeland F. Head, business manager for Subordinate Lodge 74, went to the headquarters of International for the purpose of petitioning International, through its president, that District 60 be disbanded, and W. A. Calvin, the president, refused to entertain any petition from the duly elected representative and business manager of Subordinate Lodge 74, and refused to make any changes in the action that had been taken by him and the Executive Council.

The plaintiffs made the whole of the constitution of International a part of its pleadings.

Plaintiffs prayed for the following injunctive relief against defendants:

1. That defendants be restrained from disbursing, or becoming obligated to disburse, any of the monies which have been appropriated or collected from Subordinate Lodge 74 or its members by District Lodge No. 60.

2. Restraining defendants from appropriating or collecting any further monies or property from Subordinate Lodge No. 74, or its members, except regular monthly dues and death and disability insurance payments in the amounts paid prior to May 5, 1958, or less.

3. Restraining defendants from selling, mortgaging, encumbering, disposing of, destroying or placing any or all of the property of Subordinate Lodge No. 74 beyond the jurisdiction of the court.

4. Restraining defendants from incurring any debts, obligations or expenditures for, against or on behalf of Subordinate Lodge No. 74.

5. Restrained from altering, disposing of or destroying the books, records, accounts or files of District No. 60, or those of Subordinate Lodge No. 74 in possession of the District Lodge, or, removing them from the office of the District Lodge, or, if they are located elsewhere, from removing them from the jurisdiction of the court.

6. Restrained from retaining possession of the books, records, accounts or files of Subordinate Lodge No. 74 which were removed from the office.

7. Restrained from dispatching any persons whatsoever to jobs within the territorial jurisdiction of Subordinate Lodge No. 74, or interfering with said Lodge's dispatching its members to jobs within its territorial jurisdiction.

8. Restrained from interfering with the local affairs of Subordinate Lodge No. 74 by prohibiting or preventing meetings or election of officers.

9. Restrained from representing themselves to be officers or local representatives of Subordinate Lodge No. 74.

10. Restrained from taking punitive action, filing charges or discriminating against plaintiffs or other members of Subordinate Lodge No. 74, 132 or 577 for joining in this cause or for cooperating with plaintiffs in same.

The defendants filed an answer containing a plea to the jurisdiction, a plea in abatement, numerous special exceptions going to the substance and form of the petition, and detailed pleading explaining the action. The position taken by defendants in the answer, apart from the plea in abatement, was that the action of the president and Executive Council was a bona fide exercise of constitutional authority to create District Lodges in areas where two or more subordinate lodges are in existence and in industries where shop interests so require for the mutual protection of the subordinate lodges, and to provide harmony between the lodges and shops.

The plea in abatement asserted the suit could not be maintained until such time as plaintiffs had exhausted their interorganization remedy by appeal first to the Executive Council, which had judicial power over union affairs when the International was not in assembly by convention, and then to the International Convention.

The trial court sustained the plea in abatement. While the order of the court recites the parties wished to present in limine their plea to the jurisdiction, plea in abatement and special exceptions, the order actually only disposed of the plea in abatement, it actually stating the Court "is of the opinion that the Plaintiffs' suit for a temporary injunction against Defendants was prematurely brought and that Plaintiffs' suit should be abated until such time as plaintiffs have exhausted their remedies with the structure of their own organiza-

tion. * * * It is, therefore, ordered * * * that Plaintiffs' suit be and the same is hereby abated and dismissed * *."

These are the parts of the constitution we deem material to the question before us.

Article I, Sec. 4, provides that executive and judicial authority is vested in the Executive Council when the Brotherhood is not in session.

Article III, Sec. 2 provides the Executive Council shall consist of the International president and the 16 International vice-presidents.

Article III, Sec. 3, provides the Executive Council shall have power to charter District and Subordinate Lodges, to establish and regulate all constitutional forms of the International Brotherhood, and to handle and administer all business and financial affairs of the International Brotherhood.

Article III, Sec. 4, provides the Executive Council shall have supervision over the International Brotherhood when the Brotherhood is not in convention. The meetings of the Council shall be annual, but special meetings may be called. The Council shall have power to pass on any subject, proposition or grievance, and hear and determine all appeals and rulings of District and Subordinate Lodges. All decisions of the Executive Council shall be final.

Article III, Sec. 5, provides the Council shall hear and determine all grievances referred to it and shall recommend remedies for and adjust the same.

Article VIII, Sec. 1, provides:

"In localities where two or more Subordinate Lodges are in existence and in industries where shop interests so require, District Lodges may be formed at the direction of the International President and Executive Council for their mutual protection and to provide harmony between different Lodges and shops. The International President and Executive Council shall determine what Lodges are eligible for affiliation with the District. The By-Laws of all District Lodges shall be approved by the International President before becoming effective."

Article V, Sec. 5, provides resort shall not be had to the courts until the remedies provided by the constitution of the International shall have been exhausted.

We have before us the very narrow question of whether under the allegations in Plaintiffs' Petition the trial court erred in sustaining defendants' plea in abatement.

■ The plea in abatement was determined on a basis of the pleading alone. No evidence was heard. We must therefore construe the pleading as on demurrer, accepting the allegations made to be true and indulging every reasonable intendment. Atkinson v. Thompson, Tex.Civ.App., 311 S.W.2d 250, n. r. e. Though there be pure conclusions of fact, they suffice in the absence of special exception. Atkinson v. Thompson, supra.

While we realize defendants filed special exceptions, they were not acted on. We, therefore, are not reviewing the court's action on special exceptions. We cannot, however, entirely escape noticing the sufficiency of the pleading, but must notice it to the extent that we determine whether in the light of what was plead the court erred in sustaining the plea in abatement.

We have concluded that the effect of Plaintiffs' Petition is to allege that while under Article VIII of the constitution the International president and Executive Council have authority to create District Lodges, they can do so only if facts exist showing that shop interests require it for the mutual protection of existing Subordinate Lodges and to provide harmony between the different Lodges and shops. They then allege that there was no need in fact for a District Lodge and there was no disharmony between Locals 74, 132 and 577, but that the action of the defendants

was not in good faith but was arbitrary and capricious and was taken not for the mutual protection of the Subordinate Lodges or to provide harmony but for their own personal aggrandizement.

They also allege invalidity of Article VIII because it is arbitrary and capricious and also because it violates due process by failure to provide notice and hearing for the affected Subordinate Lodges. We do not think the Article invalid, as we will later discuss.

Plaintiffs thus contend District Lodge 60 is not legally created and it has interfered with the rights of plaintiffs by requiring Subordinate Lodge 74 to make a $2,000 loan; by directing that hereafter all field dues be paid to District Lodge 60 that formerly were paid to Subordinate Lodge 74; by illegally taking possession of its books; and by taking over the function of dispatching persons to jobs within the jurisdiction of 74 and that members of Subordinates 132 and 577 are now dispatched to jobs along with members of No. 74 within the territory of No. 74, thus cutting down job opportunities for members of No. 74.

We think that while under provisions in the constitution the International president and the Executive Council have authority to create District Lodges where two or more Subordinate Lodges are in existence, they can do so only if shop interests require and it is necessary for the mutual protection of the Subordinates and to provide harmony between them.

■ The law undoubtedly is that the constitution constitutes a contract between the International and its Subordinate Lodges and its members, and is binding on the Subordinate and its members. It is likewise binding on the International. International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729, and authorities there cited; 5 Tex.Jur., Sec. 6, and authorities there cited.

■ The contract here is that though there be Subordinate Lodges with defined jurisdictional areas, these jurisdictional areas may be disturbed by the International president and Executive Council by the formation of District Lodges, if shop interests are such that a District Lodge is necessary to furnish mutual protection to the Subordinate Lodges and to provide harmony between them. We do not think, however, that the constitution commits to the president and Executive Council an unbridled discretion to create District Lodges in territories already occupied by Subordinate Lodges.

■ Courts may not interfere in the internal administration of Union affairs unless the action complained of is not taken in good faith, is arbitrary and capricious and involves property rights or civil rights. International Longshoremen's Association v. Graham, Tex.Civ.App., 175 S.W.2d 255, no writ history; Brotherhood of Railroad Trainmen v. Luckie, Tex.Civ.App., 286 S.W.2d 712, n. r. e.; Brotherhood of Railroad Trainmen v. Price, Tex.Civ.App., 126 S.W.2d 74, ref. We are not unaware that in these cases, with the exception of the Luckie case, the court refused to intervene, either because there had been no exhaustion of remedy within the organization or because there was no allegation of bad faith, fraud or arbitrary action. However, in each the court recognized that if there were allegations of bad faith, fraud, arbitrary and capricious action, and such were sustained by the evidence, a case would be presented for judicial interference. In the Luckie case, there being an exhaustion of inter-organization remedies, the court did intervene because the action of the Brotherhoods was alleged to be illegal, arbitrary, capricious and unjustly discriminatory.

■ Appellees, who were defendants below, seem to contend, however, that the cases relied on by appellants are cases where the International or its officers were

acting in disciplinary matters and were in violation of a provision of the constitution. Appellees contend that they but exercised an authority given them by the constitution which required the exercise of judgment and therefore the courts will not intervene because they were not acting illegally. We do not know as a fact that they were, but appellants have alleged they acted illegally because they did not exercise an honest judgment but acted in bad faith, arbitrarily, capriciously and for their own personal aggrandizement. While an authority may be conferred, it must be exercised in good faith. The action must have some reasonable basis. We think the rule is correctly stated in International Longshoremen's Association v. Graham, supra. There the court had before it the question of whether, under the circumstances, the International had legally exercised its right to create a new local in place of an existing local. The court held, as do we, that ordinarily courts have no power to supervise or regulate the internal affairs of a Union. The court then said [175 S.W.2d 257]:

"Assuming that the constitution and bylaws do not contravene the law of the land, and there is no contention that they do in this case, the courts' powers are limited in a controversy of this nature to the questions of determining whether or not such constitutions and bylaws were substantially complied with and whether or not the officials involved acted in good faith in taking the action complained of. It is not for the courts to determine as an original proposition that some other action would have been better. The courts can only determine whether the officials charged, under the facts and circumstances shown, had reasonable cause in the exercise of an honest judgment to take the action complained of. Many authorities we think support this proposition. Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; Harris v. Missouri

Pac. Ry. Co., D.C., 1 F.Supp. 946; Gonzalez v. Roman Catholic Archbishop of Manila, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131; Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666; Sherard v. Walton, D.C., 206 F. 562."

In Nilan v. Colleran, 283 N.Y. 84, 27 N.E.2d 511, the Court of Appeals of New York had before it a case where the International Union had created a new local union with territorial jurisdiction in part the same as an existing local. The court held the constitution authorized the creation of a new local without the consent of the old local. It recognized, however, the right of the courts to examine the exercise of the authority to determine if there was some reasonable basis for the action. See also Harris v. Missouri Pacific R. Co., D.C., 1 F.Supp. 946; O'Keefe v. Local 463 of United Ass'n of Plumbers and Gasfitters of United States and Canada, 277 N.Y. 300, 14 N.E.2d 77, 117 A.L.R. 817.

█ On trial a court is, in a case like this where the Union is exercising an authority given by its constitution, limited to determining whether the authority was exercised in good faith in the exercise of honest judgment or whether it was exercised arbitrarily or capriciously. There may be evidence showing facts from which the conclusion can reasonably be drawn that the authority was exercised in good faith and if so the action of International must be sustained though there be some evidence to the contrary.

Plaintiffs contend Article VIII is invalid because it makes no provision for notice and hearing to the affected Subordinate Lodges. Defendants contend that cases requiring provisions for notice and hearing apply only to those cases where disciplinary action is taken either against a member or a Subordinate Lodge. All cases cited to us where the matter of due process has been discussed have been cases involving disciplinary action.

█ We do not, however, see why in a case of this kind the Subordinate Lodge

is not entitled to notice and hearing. If a District is created in a jurisdiction occupied by Subordinate Lodges the rights of the members of the Subordinate Lodges are vitally affected. As alleged here the opportunities at jobs of the Subordinate No. 74 are greatly lessened, and the Subordinate Lodge must help support the District. The right of the members to work is a valuable property right. When opportunity to exercise the right is lessened the right is interfered with. We do not mean to say the International may not legitimately act so as to lessen the value of the right. We merely say it is of such a nature as to require, in a case of this kind, notice and the right to be heard. The very essence of due process is the right to be heard.

■ However, we do not feel the absence of a provision for notice and hearing invalidates the provision of the constitution. The requirement will be supplied by implication. United Brotherhood of Carpenters, etc. v. Carpenters Local Union No. 14, Tex.Civ.App., 178 S.W.2d 558.

Appellants apparently received some type of notice because it is alleged that Subordinate Lodge President Kirtley, Business Manager Head, and an unnamed third person went to International headquarters about May 5 to discuss this matter. However, it is alleged that this in fact constituted no hearing because they refused to seat the third delegate and Kirtley and Head entered into the conspiracy to create the District Lodge without the consent of the Subordinate Lodge. We do not mean that consent of the members of the Subordinate Lodge need be obtained. In fact, it need not be. However, it is entitled to an opportunity to fully present its views with a view to convincing International of the inadvisability of creating a District Lodge.

It may be said that in all of the foregoing we may have in fact been discussing whether a cause of action has been alleged, when the court below did not pass on exceptions. Such is probably the case, but we do not know how to avoid it in connection with determining whether the plea in abatement was correctly sustained. If those allegations are true, then appellants have a right to complain. Then the question arises as to whether the plaintiffs have exhausted their inter-organization remedies, or, if they have not, whether they have pleaded facts excusing them from doing so.

■ It is well settled that the remedies provided by the International constitution for the settling of grievances must first be exhausted before resort may be had to the courts. Screwmen's Benevolent Association v. Benson, 76 Tex. 552, 13 S.W. 379; Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex. Civ.App., 119 S.W.2d 908, writ ref.; Brotherhood of Railroad Trainmen v. Price, Tex.Civ.App., 126 S.W.2d 74, writ ref.; 5 Tex.Jur., Sec. 22.

Here the constitution provides remedies. Article III, Sec. 4, provides the Executive Council shall have power to pass on any grievance. However, appellants in their petition allege that appeal to the Executive Council would be a futile thing because the Council in the first instance participated in the determination to create District Lodge No. 60. Then by way of trial amendment they allege that in July Leeland Head, business manager, went to International headquarters for the purpose of petitioning International through its president that District Lodge No. 60 be disbanded and Mr. Calvin, the International president, refused to entertain any petition with reference to changing the action he and the Executive Council had taken.

■ It is to be noted that the record does not affirmatively show that this trial amendment was permitted to be filed, but it was dictated and signed and filed by plaintiffs and was signed by the judge. However, it not appearing affirmatively that the trial amendment was not filed without permission (the judge having

signed it), it will be presumed it was filed with permission. Davis v. Krupp, Tex. Civ.App., 75 S.W.2d 309, error dism.

The constitution also provides the action of the Executive Council shall be final. There are some specific instances in which appeal to the International Convention is allowed. We do not read those provisions as applying to the situation here involved.

■ We think there need be no exhaustion of remedy where appeal would be meaningless. Here we think there are sufficient allegations to excuse appeal to the Executive Council. In the first place, there is the allegation that it was the act of the International president and the Executive Council which created the District Lodge. Too, the Executive Council meets only annually though it may have special meetings. However, the only provision we find for calling such special meetings authorizes them to be called by the International president. International Constitution, Article III, Sec. 9. In the trial amendment it is alleged that the plaintiffs through Leeland Head sought to obtain review of the action, but Mr. Calvin refused to entertain any petition. Willis v. Davis, Tex.Civ.App., 233 S.W. 1035; Hargrove v. Brotherhood of Locomotive Engineers, D.C., 116 F.Supp. 3; Washington Local Lodge, etc. v. International Brotherhood, 33 Wash.2d 1, 203 P.2d 1019.

Appellees in this connection cite particularly Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex. Civ.App., 119 S.W.2d 908, writ ref., contending it holds that the mere fact that the same officials would act on the motion for rehearing and that the investigating officer would reinvestigate the matter was not sufficient to show the parties could not get a fair hearing so as to excuse awaiting action on the petition for rehearing before resorting to the courts. The case does hold this. However, in that case there was no contention that the action complained of was arbitrary. Here the very basis of the suit is the alleged arbitrary action of the defendants.

It is to be borne in mind that we have nowhere been discussing any facts that are established by evidence. We merely have before us the allegations by plaintiffs. For all we know, the evidence may show a mere good faith exercise of authority by the International president and the Executive Council. The appellants are, however, under their allegations, entitled to an opportunity to introduce evidence.

We have read each case cited by each party to this case and have done independent research of our own. To discuss the inapplicability of those not cited in this opinion would unduly lengthen an already long opinion. It suffices to say we do not cite them, either because they would merely be cumulative or are factually distinguishable.

The judgment of the trial court is reversed and remanded.