Benjamin Brenner, J.
This is a motion for a temporary injunction in an interunion struggle for control of New York Association No. 88 of Masters, Mates and Pilots of America, hereinafter referred to as Local 88. The officers of Local 88 are elected pursuant to section 4 of article 3 of the Local’s con *412 stitution which reads: “ Nomination of officers of this association shall be made quadrennially at the first meeting in September, the election to take place on the second meeting in December, and the installation of officers at the first regular meeting in January. If any vacancy occurs by death, resignation, or otherwise it shall be filled by the executive committee pro tern until such appointee be approved by the members, at first regular meeting thereafter.”
An election pursuant to this provision was held in December, 1956 and the following six were elected: president, Atkins; vice-presidents Shea and Gurnee, and trustees Barlow, Fesco and Oliver. According to article 6 of the constitution these officers and the business manager became a seven-member executive board of Local 88, plaintiff Martin having been designated as such business manager.
The members of the union are seafaring people and number between 1,200 and 1,800, some 85% of whom are perpetually at sea or out of town; hence the protracted nominating and election procedures set out in the constitution.
Following the election, president Atkins and trustee Barlow were convicted of crime and they resigned from their respective offices. On March 10, 1958 the executive committee replaced them with Ash as president and Anderson as trustee, pro tern, at an executive board meeting attended by four of the seven officers. A meeting of the membership was regularly had on March 12, 1958 in the hall of the union premises which was attended by some 165 members. While the agenda of the meeting is not made clear in the papers, it is apparent that one of the matters to be considered was the confirmation of the appointees by the local executive board. Plaintiffs’ version of the events are briefly as follows: president pro tern Ash opened the meeting and, after a moment of silence for departed members, was forcibly removed from the platform by the named defendants. While being thus -removed he pronounced the meeting recessed. Ash and other officers then took refuge in the union office located in the same building. They were later requested to attend the rump session which continued in the ball but refused to do so. Thereafter the books, records and assets of the union were seized by the named defendants who prevented entry into the offices. The police were alerted and visited the premises, declining to interfere with the activities of the defendants and their followers. Ash and Gurnee refused to leave the office where they took refuge but after spending the night there the former withdrew, the latter staying on several days and nights when all the locks throughout the building were *413 changed and the officers effectually barred from entry into the office. The defendants and their followers thereupon proceeded to publish their account of the affair and of the activities of the incumbents to the steamship companies and to the public and to circulate petitions among the members justifying and confirming their course of conduct and the reasons for the coup, taking the further precaution to discharge and replace certain union employees known as patrolmen.
The grievances of the insurgent group are as follows: that the election in 1956, like that in 1954, was illegal because several of those elected had not accepted their respective nominations as required by section 1 of article 8 of the Local’s constitution; that vice-president Grurnee voted against president pro tern Ash at the executive board meeting on March 10, 1958; that the five remaining officers transferred some $30,000 of the assets of Local 88 to a realty corporation controlled by Martin which owned the union premises; that improper books of account of Local 88 were kept by the incumbent officers and that cash, disbursement and ledger books were entirely lacking; that such incumbent officers had conspired to arrange for an unwanted trustee of the International union; that the five remaining officers permitted president Atkins and trustee Barlow to remain in office for some time following their conviction for ‘ ‘ back door shipping,” i.e., bribery for shipping jobs out of regular turn, or shipping men out the back door for a price; that the five remaining incumbents paid $2,000 of union funds for Atkins’ legal defense; that said five incumbent officers continued and permitted the presence in the union of former president Atkins who was a man of violent propensities, having a long criminal record prior to his latest conviction, thus bringing Local 88 into disrepute and jeopardizing its welfare in the industry and in the labor movement.
Thus aggrieved, the insurgent group claims the right to control of the assets, offices and affairs of Local 88 and insist they accomplished their objective in a lawful manner through use of the membership meeting, ostensibly called to confirm into permanent position the two designated officers pro tern. They accordingly challenged the authority of Ash as president pro tern at the membership meeting on March 12, 1958, forcing him to leave the chair and the platform soon after he opened the meeting, escorting him out of the hall, constituting themselves as a committee of the whole in purported compliance with the expulsion proceedings provided in article 9 of the constitution, hereinafter cited, and proceeding to do the following: (1) to elect defendant Holdeman as temporary chairman under the *414 provisions of section 3 of article 4 of the constitution which prevents such election upon absence or refusal to so act by the vice-president; (2) to suspend the regular order of business; (3) to suspend all officials pending a trial to be conducted at a future date; (4) to elect Holdeman as temporary president and all other officers as temporary officials; and (5) to authorize defendants Holdeman and Boring to sign their names to union checks and to run the affairs of Local 88.
Preliminarily I must dispose of the point made on oral argument and in plaintiffs’ brief, that the defendants and their attorney called and conducted a meeting on March 14,1958 after stay thereof had been ordered by Mr. Justice Benjamin. The issue of contempt of court for disobedience of such stay is not before me and must be separately disposed of before the Justice who ordered it.
The principal question is whether the fact issues may be determined upon the papers and exhibits presented upon this motion for a temporary injunction. Certainly no testimony is required to establish that the legality of the 1956 election may not be challenged upon this motion at this late date, particularly where most of those challenged have already resigned their respective offices as indicated below. However meritorious the grievances of the defendants as leaders of the dissident group, however long the criminal record of the former president and knowledge thereof by the elected incumbents, and no matter how true their condonance of the practice of bribe taking for favoritism in job opportunities, the ouster of such alleged malefactors, racketeers and violators of trade union trust, if such they be in fact, must be accomplished through lawful means.
The meeting, ostensibly called to confirm the two officials temporarily designated, could not be transformed, without prior notice to them, into a meeting of the whole to conduct a trial for alleged misconduct, and was not in compliance with the provisions of article 9 of the constitution of Local 88. Sections 1, 2 and 3 of article 9 require that the charges be in writing and signed by those making accusations; section 4 permits a meeting regularly called to resolve itself into a committee of the whole to try accused members who are present, presumably prepared to face and answer them in person; section 5 provides a procedure for the trial of accused members in their absence with requirements for notice, etc. What transpired at the meeting of March 12 concededly was no such trial because the events complained of did not correspond with the provisions aforesaid, nor by any stretch of the meaning thereof do these provisions warrant even the suspensions pending future charges and trial. *415 They most certainly do not authorize the assumption of powers and the seizures of plant, records and office complained of by the plaintiffs. Even if the meeting of March 12 had not been properly recessed by the presiding officer, had the meeting continued with few leaving and in proper and orderly fashion as claimed by defendants, the very utmost that could legally be accomplished thereat by the defendants and their followers was to decline to confirm into permanent office the two officials previously designated by the executive committee. Indeed, it may be said that refusal by the membership to so confirm is in fact adequately established. But until the officers are lawfully expelled or suspended pursuant to the procedure therefor, as provided by article 9 of the Local’s constitution, they continue to act as duly elected officials during their incumbency. Until they are lawfully removed in strict accordance with the requirements of the constitution, they continue to constitute the executive committee and a majority of them may, under its provisions, continue to designate temporary officers until a first general meeting thereafter when satisfactory officers so temporarily designated are confirmed by the membership. In this connection it is well to point out that there is no provision in the Local’s constitution which provides for “ temporary officers,” or for “ temporary officers elected at a membership meeting until regular elections are held.” That the defendants and the insurgent group are fully bound in law by the provisions of the Local’s constitution is familiar law (Polin v. Kaplan, 257 N. Y. 277). It is pointless to review the legality of the designations of the temporary officers at the board meeting on March 10, 1958 because they were designated by a majority regardless of Gurnee’s vote and moreover, those disputed appointees were effectively turned down at the membership meeting.
The above conclusions accordingly indicate that there ordinarily would be no need for sworn testimony because there is no substantial or material variance of fact issues here presented for proper disposition of this motion. I am persuaded that the plaintiffs would be entitled to the sweeping injunction here requested were it not for the disclosure of added facts which transpired while and after this motion was presented. The tactics employed by the defendants and their followers are reminiscent of those long used by extremists determined to seize power in labor and civic organizations. Their methods are wholly foreign to the American concept of the rule of law. If the incumbent plaintiffs and those duly elected are indeed the miscreants and derelicts to duty and trust that they are charged with being, then the defendants and their insurgent followers *416 should prove these charges in a law abiding manner and be supplanted only as provided by the rules under which this union exists. If unionism is to be made clean and fresh, in keeping with the enlightened will of the top AFL-CIO leadership, it is important that the cleansing methods used to remove corruption and gangsterism, where they actually do exist, be free of the very evils sought to be eradicated.
Unfortunately it is difficult to act upon this motion because of the following newly arisen facts: vice-president Gurnee and trustee Fesco have now also resigned, leaving vice-president Shea and trustee Oliver as two of the six elected officers who with manager Martin remain to conduct the office and affairs of Local 88. These officers obviously lack a quorum of elected officials to make further designation of temporary officers for the four resigned posts, nor may they constitute themselves as the sole officers and executive board of Local 88 for some three years when the next election is scheduled. What is more, the International union has stepped into the picture. Its secretary Bishop wrote a strong letter to the defendants and their followers, condemning the latters’ activities.
The International union, claiming authority to do so by virtue of the provisions of the parent constitution, has designated one Lurvey as trustee of the affairs, assets and union office of Local 88. Petitions have been signed by 245 members of the Local defending the actions of the defendants and their followers. It has also been called to the court’s attention that the Ethical Practices Committee of the AFL-CIO has been investigating the affairs of the union.
Finally, it should be noted that the parties have refused to accept a plan of control pending a special election proposed by the court which attempts to follow the requirements of the constitutions of Local 88 and of the International (so far as the same are feasible).
The expulsions were illegal and the defendants’ conduct is indefensible by any concept of fair play; but in the circumstances here appearing, the motion cannot presently be determined. Unless the provisions of the Local and International charter violate natural justice, they bind the parties (Cohen v. Thomas, 209 N. Y. 407). The interests of the International are directly involved. "What is even of greater and more transcending importance, the current investigation by the Ethical Practices Committee must not be burdened by any summary disposition that may be made at Special Term. A trial justice must moreover determine if the issues may be adequately disposed of through internal trade union processes (Rubens v. *417 Weber, 237 App. Div. 15; O’Keefe v. Local 463 of United Assn. of Plumbers & Gas Fitters, 277 N. Y. 300; Dusing v. Nuzzo, 178 Misc 965).
The motion is respectfully referred to the Trial Justice at Special Term, Part III and a trial of the issues is hereby ordered at the opening of the April 1958 Term, or as soon thereafter as may be convenient to the said Justice. The International trustee shall have control of the office and assets of the union pending determination by such Trial Justice, and said International trustee shall be brought in as a party herein and all pleadings shall be served upon him with a copy o'f an order to be entered herein not later than March 28,1958, with leave of legal counsel to the Ethical Practices Committee of the AFL-CIO to be present at such trial. The stay contained in the order to show cause is continued until determination by the Trial Justice.
Settle order on notice forthwith.